**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

STATE OF OREGON, et al.,

Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 3:25-cv-01756-SI

DECLARATION OF CRAIG DOBSON IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

I, Craig Dobson, declare:

1. I am the Assistant Chief of Operations at the Portland Police Bureau (PPB), a unit of the City of Portland. The facts and events described below are personally known to me and if called to testify as to their accuracy, I would do so. I submit this declaration in support of Plaintiff's Motion for Temporary Restraining Order.

## I. DECLARANT BACKGROUND.

2. I joined PPB as an officer in July 1998 and have remained with PPB up through today. During that time, I was steadily promoted through the ranks, becoming a captain in 2019. In June 2024, became PPB's Acting Assistant Chief of Operations. In January 2025, my acting designation was dropped and I assumed this position in a nonacting capacity.

3. In addition to basic and advanced academy training, which included learning crowd-management principles, laws, and practices, I have received well over 100 hours of public-order training specific to managing public-order events. I also have well over 200 hours of Incident Command System (ICS) training through FEMA's National Incident Management



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

System. I received additional crowd-management instruction while completing the Government Training Institute's Public Order Management course as well as FEMA's Emergency Management Institute All-hazards Operations Section Chief training. Further, I have been a Department of Homeland Security Certified Instructor for the Center for Domestic Preparedness. Currently, I help instruct for the National Tactical Officers Association.

4. I have considerable crowd-management experience from my roles in PPB. For instance, from 2010 through November 2013, I served as Special Events Coordinator for PPB's Central Precinct's (i.e., Downtown, Portland). My duties as Special Events Coordinator involved coordinating with the organizers of parades, gatherings, and demonstrations in the public right of way, such as sidewalks and streets. Later, I was incident commander for many of the protests occurring in spring and summer of 2020. These events provided me, and PPB, with significant insights into crowd-management, including the need to differentiate between largely peaceful protestors and select bad actors interspersed within a crowd. I teach these practices as ICS instructor for PPB and I lead PPB's Crowd Management Incident Commander (CMIC) training.

5. In my current role as Assistant Chief of Operations, I oversee a wide array of PPB's law-enforcement structure. I supervise commanders of PPB's North, East, and Central Precincts. I also play a role in deciding whether to activate a CMIC ahead of (or during) an incident and, once activated, I consult with the incident command. As Assistant Chief of Operations, I also review PPB policy, including updates to PPB's crowd management policy, No. PPB-0635.10. A true and correct copy of PPB's Policy No. 0635.10, pertaining to Public Order Events, is attached as Exhibit A.

6. Policy No. 0635.10 is reviewed and updated biannually.



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## II. PPB BACKGROUND.

7. PPB employs approximately 812 full-time officers. The number of officers in the field at any given time varies considerably based on shifts, and PPB incident-management needs. Approximately 242 full-time officers are assigned to the East, North, and Central Precincts that I oversee.

8. All entry-level PPB officers attend a 16-week State Basic Academy after being hired. Basic training involves classroom, skills, and scenario-based learning. In part, this training covers use of force, law related to policing, and police tactics. After basic training, all PPB officers—including laterals from other law enforcement agencies—attend a 10-week Advanced Academy designed to develop higher levels of skill and confidence in communication, application of the law, decision-making, and tactics. Advanced Academy also covers crowd management, First Amendment law, and policy. Through Advanced Academy training, officers develop a full range of knowledge and skills necessary for PPB work.

9. On average, Portland officers participate in an average of 20-40 hours in-service training per year, which exceeds State of Oregon requirements.

## III. PPB CROWD-CONTROL PREPAREDNESS.

10. Basic crowd-management training is standard for all PPB officers. This training reviews relevant laws, PPB policy, and PPB strategy. This allows all officers to work cohesively on an internal basis when assigned to protests and marches, which sometimes call for special command structures, specifically the CMIC framework.

11. CMICs—incident commanders working outside of their everyday assigned PPB roles—participate in a forty-hour course emphasizing crowd-management theory, strategy, and



Department of Justice
100 SW Market Street
Portland, OR 97201
(503) 947-4700 / Fax: (503) 947-4791

command structure. CMICs may be activated based on PPB's internal risk assessment concerning a planned protest or similar event. This assessment uses such considerations as dialogue with event organizers, social media monitoring, and evaluation of any special considerations that may implicate special response teams (discussed below). Through this process, PPB attempts to get ahead of risks and put appropriate personnel and command structures in place in advance of a protest or other large crowd event.

12. PPB also trains Dialogue Officers who work with protest organizers ahead of, and during, protests and similar events. Dialogue officers receive at least thirty hours of specialized training in public order. Dialogue Officers may work within the CMIC structure (when activated) or outside of it ahead of planned protests or spontaneous incidents (these are protests planned less than twenty-four hours ahead of time).

13. PPB's Rapid Response Team (RRT) constitutes a separate part of PPB's public-order resources. The RRT is an all-hazard team of 50 officers specially trained in public order, including stewardship (i.e., crowd/event management), intervention (removing individuals from a protest or similar event), and direct crowd control through approved maneuvers and tactics. The RRT only operates under an activated CMIC. Like CMICs, RRT members receive forty initial hours for crowd management training. RRT members also receive ten hours of crowd-control training per month, which meets National Tactical Offices Association standards.

14. CMICs are generally activated for larger protests. For example, a CMIC was activated for an April 2025 "No Kings" protest that drew between 40,000 and 50,000 participants. For events of that scale, which are likely to impact traffic, PPB will separately activate additional traffic division resources. Similarly, PPB will coordinate with state and



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

regular assigned existing federal partners to maximize public safety and maintain public order. PPB conscientiously tries to match crowd-management resources to its assessed risks and stewardship objectives.

15. In addition to CMICs, the RRT, PPB employs smaller Mobile Field Forces of seven officers and one sergeant which can move from one precinct to another as resources demand. Mobile Field Forces can be requested at the precinct level when there is no CMIC structure.

16. Under typical circumstances, no CMICs/RRTs/MFF are operating. *PPB assessed risks* dictate its activation of these resources. If these additional resources are or appear insufficient for a given risk or event—specifically where PPB anticipates that a protest, for example will stretch the capacity of PPB's on-duty workforce, including its CMIC structure and RRT, PPB has and will call in off-duty personnel to strength capacity. This practice can considerably expand PPB's crowd-control and law-enforcement resources to meet crowd-management and law-enforcement objectives.

17. If PPB anticipates risks exceeding its work-force capacity, or when events pose specialized need, PPB may call on mutual aid from other local and state agencies. Mutual aid is supplied pursuant to written agreements with partner agencies. At present, PPB has mutual aid agreements in place with the Multnomah County Sherriff, the City of Gresham, the Port of Portland, Clark County, Washington, and the Oregon State Police. In short, PPB has a wealth of resources it can call on without recourse to either the National Guard or federal partners.



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

18. Should it become critical to seek additional resources above and beyond those previously discussed, PPB may also receive aid from the National Guard in cases of a locally declared emergency and request to the Governor for national-guard resources.

## IV. PORTLAND ICE-FACILITY PROTESTS.

19. U.S. Immigration and Customs Enforcement (ICE) has a facility (the ICE Facility) located at 4310 S. Macadam Avenue in Southwest Portland.

20. Following federal officials' arrest of asylum seekers in Portland's Immigration Court this past June, small groups of protestors—generally less than 100 people and consistently not more than two-dozen individuals—began gathering outside of the ICE Facility on a nightly basis.

21. The ICE Facility is located within the territorial jurisdiction of PPB's Central Precinct. Approximately 80 full-time officers are assigned to Central Precinct. Because Central Precinct covers downtown Portland, its officers are generally well acquainted with public protests and crowd management. Unless a CMIC is activated, protests at the ICE Facility are subject to general Central Precinct monitoring.

22. Based on PPB's internal risk assessments concerning the ICE-Facility protests, I activated a CMIC on June 11 through June 25, 2025. The incident commanders activated the RRT on each of these dates, mostly in a monitoring capacity. On these nights, protest monitoring was performed by the activated incident command and no additional monitoring was performed by Central Precinct. For the most part, these protests have been peaceful. While PPB has intervened to protect public safety on occasion, the need has been limited. For example, PPB



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

made 25 arrests at the ICE-Facility protests between June 11 and June 19, 2025, but PPB has made no arrests at the ICE-Facility since June 19, 2025, despite nightly monitoring.

23. After June 25, 2025, based on decreasing risk posed by the ICE-Facility protests, PPB temporarily employed a hybrid monitoring approach, where an incident commander performed monitoring until midnight and Central Precinct took over monitoring duties the rest of the night. Once this temporary structure was instituted, a non-hybrid incident command (i.e. a regular CMIC) was only activated as a precautionary measure around planned protests occurring on July 4 and July 17, 2025. On each of these two dates, PPB officers preserved public safety at the protests without making a single arrest.

## V. ICE-FACILITY PROTESTS DO NOT WARRANT FEDERAL RESOURCES.

24. Since July 18, 2025, Central Precinct officers have carried out routine monitoring of the ICE-Facility protests without serious incident. In that time, the risks posted by nightly ICE-Facility protests have not merited anything more than standard, periodic monitoring like any other neighborhood in the City. There has been no need to move additional crowd-management resources into the area.

25. The notion that the ICE-Facility protests cannot be adequately managed by those local and federal resources already present before September 27, 2025, when the federal government ordered the deployment of federal troops into the area, cannot be squared with the facts on the ground. For the most part, nightly ICE-Facility protests since July 18, 2025, have been limited to fewer than thirty participants. The protests have been largely sedate during this time. Certainly, these protests bear no resemblance to the sustained, large protests of 2020.



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

26. If the ICE-Facility protests reasonably threatened public safety or public order, PPB could and would utilize its menu of additional resources to define the need and address it. It has not been necessary given the nature of these small nightly protests. In fact, on any given weekend, the nightlife in Portland's entertainment district has warranted greater PPB resources than the small, nightly protests in front of the ICE facility.

## VI. PPB CAN MAINTAIN PORTLAND'S PUBLIC SAFETY WITHOUT FEDERAL TROOP ASSISTANCE.

27. Not only are events under PPB control at the ICE Facility, but Portland's general public safety is not under threat. PPB continues to operate under normal conditions and violent crime in the City is significantly down as compared to last year. For example, Portland has seen 28 murders this year, substantially fewer than the 53 murders it had experienced at this same point in 2024. Injury shootings are similarly down 31 percent compared to this point last year. These figures are approaching Portland's prepandemic crime rates, well off of peak violent crime levels experienced by Portland in 2021 and 2022. Portland's murders, rapes, burglaries, and robberies are all on the decline. Portland is not under siege, war-ravaged, or otherwise a particularly violent or unruly major city. There is no law-enforcement or public-order need for a federal deployment to Portland.

## VII. TROOP DEPLOYMENT THREATENS TO UNDERMINE PUBLIC ORDER.

28. The contemplated federal troop deployment is unnecessary and counterproductive. Rather than improve public safety at the ICE-Facility protests, or in Portland more generally, the deployment is likely to provoke a larger protest.



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

29. Based on my experience with federal actions during Portland's 2020 protests, an expanded federal law enforcement presence is ultimately more likely to endanger public safety than to improve it. Larger protests bring crowd-management complexity. PPB will employ resources as needed to protect public safety but the deployment will doubtless make things more, not less, difficult. PPB will also attempt to manage the anticipated, larger protests in consultation with our regular assigned existing federal partners—as remains our standard practice—but this consultation would not be necessary save for the federal deployment. The deployment will predictably incite a response that undermines the stated goals of the deployment.

30. Beyond the risk that the deployment will undermine public safety and order, the deployment will unnecessarily draw upon PPB resources and potentially the resources of our mutual aid partners, depending on the size and nature of subsequent protests. Implementing CMICs and activating the RRT draw resources from PPB's regular functions. For example, RRT duties are ancillary to team members' regular duties. The same is true with incident command. Scaling resources to address protests based on the federal deployment may mean that PPB is less able to respond to regular public safety calls for service. In this way, the deployment will require PPB to use resources, and funds, that were unnecessary before the deployment was announced.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

EXECUTED in Portland, Oregon on September 28, 2025.

*s/ Craig Dobson*

Craig Dobson, MA
Portland Police Bureau
Asst. Chief of Operations



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

**CERTIFICATE OF SERVICE**

I certify that on September 29, 2025, I caused to be served the foregoing DECLARATION OF CRAIG DOBSON IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Susanne Luse<br>United States Attorney's Office<br>District of Oregon<br>1000 SW Third Avenue<br>Suite 600<br>Portland, OR 97204<br>Susanne.Luse@usdoj.gov<br>*By email only:*<br>Christopher.Edelman@usdoj.gov<br>Ben.Kurland@usdoj.gov<br>John.Bailey@usdoj.gov<br>Jean.Lin@usdoj.gov<br>Garry.Hartlieb2@usdoj.gov<br>Jody.D.Lowenstein@usdoj.gov<br>eric.hamilton@usdoj.gov<br>abigail.stout@usdoj.gov<br>taylor.n.pitz@usdoj.gov<br>garry.hartlieb@usdoj.gov | X HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>X E-MAIL<br>___ E-SERVE |

*s/ Scott Kennedy*
SCOTT KENNEDY
*Counsel for the State of Oregon*



Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000