BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON (NE Bar No. 25886)
Deputy Assistant Attorney General
ALEXANDER K. HAAS (CA Bar No. 220932)
Branch Director
JEAN LIN (NY Bar No. 4074530)
Special Litigation Counsel
CHRISTOPHER D. EDELMAN (DC Bar No. 1033486)
Senior Counsel
BENJAMIN S. KURLAND (DC Bar No. 1617521)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: 202 514-3716
jean.lin@usdoj.gov
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| STATE OF OREGON, and the CITY OF PORTLAND, *Plaintiffs*, v. DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, *Defendants*. | Case No. 3:25-cv-1756-SI  **Defendants' Suggestion of Recusal** |

    Defendants Donald J. Trump, President of the United States; Pete Hegseth, the Secretary of War; the U.S. Department of War; Kristi Noem, the Secretary of Homeland Security; and the U.S. Department of Homeland Security respectfully submit this Suggestion of Recusal to the Court pursuant to 28 U.S.C. § 455(a). Defendants suggest that Judge Michael H. Simon recuse himself from

this case to avoid the appearance of partiality, which reasonably can be expected to undermine public confidence in the fairness of these proceedings.

Plaintiffs the State of Oregon and the City of Portland challenge the federalization and deployment of 200 Oregon National Guardsmen to protect federal property and federal personnel in Oregon. One of the members of Congress representing Plaintiff the City of Portland and Judge Simon's spouse, Representative Suzanne Bonamici, has interfaced, in her official capacity, with each Defendant on the subject of this suit. She has told Defendants that she "reject[s] [the] decision to deploy troops to Portland, Oregon," and she "demand[ed] . . . that [they] rescind [their] order."[1] Representative Bonamici has made factual assertions and offered legal conclusions about the propriety of deploying Guardsmen, suggesting that the deployment would result in "violations of law."[2] She also participated in and spoke at a press conference with Governor Tina Kotek and Plaintiffs' other elected officials the day before this lawsuit was filed on the very subject of this suit and is seen standing behind and then next to Governor Kotek in a video that Plaintiffs hyperlink to in their complaint.

To be sure, Defendants recognize that Judge Simon and Representative Bonamici speak for themselves, not for each other. Nonetheless, the unique factual, legal, and political role that Judge Simon's spouse has played in the central events of this lawsuit may create the appearance of partiality. The principles of Section 455 therefore counsel in favor of recusal. The significant public interest in this lawsuit likewise makes it vital that the Court endeavors to ensure public confidence in the outcome of litigation by removing any possible perception of partiality.

---

[1] Letter of Senator Ron Wyden, et al., to President Donald J. Trump, et al. (Sept. 27, 2025) ("Oregon Congressional Delegation Letter"), https://perma.cc/DNP3-8BYD.

[2] *Id.* at 1.

## BACKGROUND

On September 27, 2025, at the request of the Secretary of Homeland Security, the President announced plans to send members of the National Guard to the State of Oregon.[3] As Secretary Noem has explained, federal facilities, including those directly supporting Immigration and Custom Enforcement ("ICE") and the Federal Protective Service, "have come under coordinated assault by violent groups intent on obstructing lawful federal enforcement actions."[4] Later that day, the Acting Vice Chief of the National Guard Bureau sent a memorandum to the Adjutant General of the Oregon National Guard requesting that 200 Guardsmen be mobilized under Title 32 of the U.S. Code to provide "immediate assistance to protect federal personnel, functions, and property in Oregon." ECF No. 1-1. Under Title 32, the requested Guardsmen would be federally funded but in a "non-federalized status under [the State Governor's] command and control." *Id.*

That same day, Representative Bonamici and other members of Plaintiffs' congressional delegation transmitted official correspondence to each Defendant. *See* Oregon Congressional Delegation Letter. Representative Bonamici and Plaintiffs' other representatives told Defendants that they "reject [the] decision to deploy troops to Portland." *Id.* Representative Bonamici asserted that Portland "does not require any deployment of federal troops or additional federal agents." *Id.* And she declared that the deployment "represents an abuse of executive authority, seeks to incite violence, and undermines the constitutional balance of power between the federal government and states." *Id.* Representative Bonamici concluded by "demand[ing] . . . that [Defendants] rescind [their] order, and remove unwanted forces from the City of Portland." *Id.* at 2.

---

[3] *See* Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 27, 2025, at 10:19 a.m.), https://truthsocial.com/@realDonaldTrump/115276694936263266; Compl. for Declaratory & Injunctive Relief ("Compl.") ¶ 54, ECF No. 1.

[4] Letter from the Department of Homeland Security, "Request for Assistance from the Department of War for Federal Facility Protection Support to Department of Homeland Security (State of Oregon)" (Sept. 26, 2025), attached as Exhibit A.

At a press conference held that same afternoon, Oregon Governor Tina Kotek stated that there was "no need for military troops" in Portland and declined to voluntarily activate the National Guard.[5] Governor Kotek was joined at the press conference by, among other officials, Representative Bonamici, whose congressional district includes parts of Portland, and more specifically, the federal facility at issue in this case. Representative Bonamici was seen standing behind the Governor during the Governor's remarks and next to her thereafter. After Governor Kotek spoke, and following brief remarks by Portland's Mayor, Representative Bonamici also spoke at the press conference. In her remarks, Representative Bonamici agreed with the Governor's factual assertions and legal conclusions, stating that "we do not need, and we do not want federal troops here in Oregon."[6] She described the President's decision as a "gross abuse of power" and asserted that the President "does not have the authority to send military troops to a city."[7] Representative Bonamici went on to recount that she had visited Portland's ICE facility "a couple of days ago" and did not "see a single indication that we need military troops" in the city.[8] She added that "sending military troops will only make it dangerous, not just for people in Portland, but for the entire region."[9] To conclude, she declared that "no military is welcome or needed here" and that "the number of necessary troops is zero."[10] Plaintiffs' complaint quotes Governor Kotek's remarks in the press conference and cites a hyperlink of a video of the press conference. Comp. ¶ 57 & n.25.

Because Governor Kotek declined to activate 200 members of the Oregon National Guard in a non-federal status, on September 28 Secretary Hegseth issued a memorandum calling them into federal service for a period of 60 days. ECF No. 1-2. Oregon and the City of Portland filed this

---

[5] Ariel Salk et al., *Kotek to Trump: No need for federal troops in Portland*, at 1:36-1:38 (KOIN, Sept. 27, 2025), https://perma.cc/J7UK-Z9SB ("September 27 Press Conference Video"); *see* Compl. ¶ 57.

[6] September 27 Press Conference Video, at 10:26-10:29.

[7] *Id.*, at 10:33-10:41.

[8] *Id.*, at 10:45-10:48, 10:53-11:00.

[9] *Id.*, at 11:30-11:38.

[10] *Id.*, at 12:38-12:46.

lawsuit shortly thereafter and moved for a Temporary Restraining Order on September 29. The Court has scheduled a hearing for October 3, 2025, on the TRO motion.

## ARGUMENT

Under 28 U.S.C. § 455(a), "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As the Supreme Court has explained, "[t]he goal of section 455(a) is to avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988); *accord United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018). This is so because, regardless of whether a judge is in fact partial, "public perceptions of partiality can undermine confidence in the courts." Federal Judicial Center, *Judicial Disqualification: An Analysis of Federal Law* 20 (3d ed. 2020) ("*Judicial Disqualification*").[11] Thus, "[i]f it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists." *Liljeberg*, 486 U.S. at 860.

The Supreme Court has also explained in a related context that because of "[t]he difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one," the relevant question is "not whether the judge is actually, subjectively biased," but whether, as an objective matter, "the average judge in his position is 'likely' to be neutral or whether there is an unconstitutional potential for bias." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881, 883 (2009); *see In re Creech*, 119 F.4th 1114, 1121 (9th Cir. 2024) ("The standard is objective."). When Congress amended § 455(a), it "ma[de] clear that judges should apply an objective standard in determining whether to disqualify." *Judicial Disqualification* at 20. "Judges contemplating disqualification under § 455(a), then, should not ask whether they believe they are capable of impartially presiding over the case." *Id.*

---

[11] *Available at* https://www.fjc.gov/sites/default/files/materials/52/Judicial%20Disqualification_An%20Analysis%20of%20Federal%20Law_Third%20Edition.pdf

Defendants' Suggestion of Recusal
5

The objective standard is "designed to promote public confidence in the impartiality of the judicial process." H.R. Rep. No. 93–1453 on P.L. 93-512, Judiciary--Disqualification of Judges, at 5 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6354–55. Accordingly, the Ninth Circuit frames the question as "'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Mikhel*, 889 F.3d at 1027 (quoting *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)). Recusal under section 455(a) "is necessarily fact-driven and may turn on subtleties in the particular case." *Holland*, 519 F.3d at 913. "Consequently, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Id.* (citation and internal quotations omitted). And "[i]f the case is close, [a] judge should recuse." *In re Creech*, 119 F.4th at 1121.

Notably, section 455(a) should be read together with section 455(b). *See Judicial Disqualification* at 14–15. Section 455(b) provides a list of specific grounds for mandatory disqualification, such as when the interests of a judge's family members could be substantially affected by the outcome of the litigation. *See, e.g.*, 28 U.S.C. § 455(b)(5)(iii); *see also* Code of Conduct for United States Judges, Canon 3(C)(3)(a). The relationships and potential conflicts of interest that are subject to section 455(b) may inform the analysis under section 455(a), and the relevant familial relationships listed in section 455(b) include a judge's spouse.

Looking to "the unique facts and circumstances" here, *Holland*, 519 F.3d at 913, given Judge Simon's and Representative Bonamici's spousal relationship, the Representative's official correspondence with Defendants and public comments can be expected to cause reasonable members of the public to question Judge Simon's impartiality. As explained above, in her capacity as a member of Plaintiffs' congressional delegation, Representative Bonamici has alleged a lack of a factual predicate for the federalization and deployment of the Oregon National Guard members to Portland ("[N]owhere did I see a single indication that we need military troops here."); expressly questioned the legality of that deployment ("[The President] does not have the authority to send military troops

to a city."); asserted that the deployment amounted to a "gross abuse of power" by the President; and demanded that Defendants rescind their order. She has also reiterated her views about the facts and legal issues raised in this case—including her asserted personal knowledge about the ICE facility that is the focal point of months-long protests. *See* Suzanne Bonamici, Bluesky (Sept. 27, 2025, 12:38 p.m.), https://bsky.app/profile/repbonamici.bsky.social/post/3lztg63qarc2h ("Donald Trump is lying. I was at the ICE facility two days ago and saw a few peaceful protesters, not a 'siege.'"). These public statements leave no doubt that Representative Bonamici has a strong interest in the outcome of this litigation, and given her role as a member of Plaintiffs' congressional delegation, her statements undoubtedly have unique salience in the eyes of the public.

Moreover, Representative Bonamici has consistently opposed any deployment of federal troops to U.S. cities, despite Congress's express authorization for the President to do so under certain circumstances, *see, e.g.*, 28 U.S.C. § 12406, and the President's independent authority to protect federal property and personnel under Article II of the Constitution. In July 2025, as she did in 2020, Representative Bonamici introduced legislation entitled "Preventing Authoritarian Policing Tactics on America's Streets Act," which is designed to "limit the deployment of federal law enforcement officers or armed forces to a city unless the aid is requested by both the mayor and governor."[12] In an accompanying press release, Representative Bonamici posited that "[t]he [federal] forces sent to Oregon in 2020 inflamed tensions and increased danger to peaceful protestors and others in the area" and that "[t]his [purported] authoritarian behavior cannot be tolerated."[13] These sentiments echo Plaintiffs' assertions of injury in this case. *See, e.g.*, Compl. ¶ 88 ("[T]he needless presence of federalized troops will lead directly to escalated tensions and increased unrest . . . .").

---

[12] Press Release, *Merkley, Bonamici Introduce Bill to Stop Occupation of American Cities By Federal Law Enforcement, Armed Forces* (July 22, 2025), https://bonamici.house.gov/media/press-releases/merkley-bonamici-introduce-bill-stop-occupation-american-cities-federal-law.

[13] *Id.*

Defendants' Suggestion of Recusal
7

Defendants do not contend that Judge Simon has joined in or necessarily shares his spouse's views. Nor do Defendants contend that Representative Bonamici's statements must be imputable to Judge Simon. *See Perry v. Schwarzenegger*, 630 F.3d 909, 911–13 (9th Cir. 2011) (denying request that a judge recuse himself from a case involving the constitutionality of California's Proposition 8 on marriage equality, about which the judge's wife made public statements both individually and in her capacity as the executive director of the American Civil Liberties Union of Southern California). Nevertheless, in light of Representative Bonamici's public attestation of facts directly relevant to this case at a news conference devoted to opposing the challenged action with the State Governor (who is also the Commander-in-Chief of the Oregon National Guard), her opinions on the core legal questions at the heart of Plaintiffs' claims in this case, her clear alignment with those claims, her numerous critical statements about the deployment of federal troops to Portland, her interest in the outcome of this litigation, and the fact that Defendants will be asking Judge Simon to reject the factual and legal assertions that Representative Bonamici has made as one of Plaintiffs' representatives, the Court must consider whether the public might reasonably question Judge Simon's impartiality. Because "[w]hat matters is not the reality of bias or prejudice but its appearance," *In re Creech*, 119 F.4th at 1121 (citation omitted), Defendants respectfully submit that the unique facts and the totality of the circumstances here warrant Judge Simon's recusal to avoid the appearance of partiality.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully suggest that Judge Simon recuse himself from this case and direct the matter to be reassigned to another judge on this Court.

Dated: October 2, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
(NE Bar No. 25886)
Deputy Assistant Attorney General
Federal Programs Branch

ALEXANDER K. HAAS
(CA Bar No. 220932)
Branch Director
Federal Programs Branch

/s/ *Jean Lin*
JEAN LIN
(NY Bar No. 4074530)
Special Litigation Counsel
CHRISTOPHER D. EDELMAN
(DC Bar No. 1033486)
Senior Counsel
BENJAMIN S. KURLAND
(DC Bar No. 1617521)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel.: (202) 514-3716
Email: jean.lin@usdoj.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 2193 words, including headings, footnotes, and quotations, but excluding the caption, signature block, and exhibits.

>                /s/  *Jean Lin*
>                JEAN LIN