**Rob Bonta**
Attorney General of California
Michael L. Newman
Thomas S. Patterson
Senior Assistant Attorneys General
Anya M. Binsacca
Supervising Deputy Attorney General
Jane Reilley
Barbara Horne-Petersdorf (CA SBN: 327738)
Deputy Attorneys General
  300 S. Spring St.
  Los Angeles, CA 90013
  Telephone: (213) 269-6667
  E-mail: Barbara.HornePetersdorf@doj.ca.gov
*Attorneys for State of California and Gavin Newsom,
in his Official Capacity as Governor of the State
of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **STATE OF OREGON,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DONALD J. TRUMP,** *et al.*, <br><br> Defendants. | Case No. **3:25-cv-01756-SI** <br><br> **BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

1

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................5

IDENTITY AND INTERESTS OF *AMICI CURIAE*..................................................................6

ARGUMENT ..................................................................................................................................7

I.    CALIFORNIA'S EXPERIENCE ILLUSTRATES THE IRREPARABLE HARM CAUSED BY DEFENDANTS' UNLAWFUL DEPLOYMENT OF FEDERALIZED TROOPS. ...................................7

    A.    Defendants' Unlawful Federalization Orders Irreparably Injure States' Sovereign Rights.........................................................................................................8

    B.    Federalization and Deployment of National Guard Troops Severely Infringes States' Police Powers....................................................................................9

    C.    Deploying Federalized National Guard Troops Injures States' Interests in Maintaining Peace and Order in their Communities.............................................11

    D.    Defendants' Federalization Orders Irreparably Harm States' Economies. ............12

    E.    The Morale of States' National Guard Troops Suffer When They Are Federalized and Deployed Domestically. ..............................................................13

II.    DEFENDANTS' FEDERALIZATION OF OREGON'S NATIONAL GUARD PROVES THEY VIEW THE JUNE 7 MEMORANDUM AS A BLANK CHECK FOR DEPLOYING MILITARIZED POLICE FORCES INTO OUR COMMUNITIES...........................................................................14

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*
    458 U.S. 592 (1982)..................................................................................................10

*Bredesen v. Rumsfeld*
    2005 U.S. Dist. LEXIS 34876 (M.D. Tenn. Sept. 7, 2005).........................................8

*Kentucky v. EPA*
    2023 WL 11871967 (6th Cir. July 25, 2023)...............................................................9

*Printz v. United States*
    521 U.S. 898 (1997)....................................................................................................8

*United States v. Morrison*
    529 U.S. 598 (2000)....................................................................................................9

**STATUTES**

United States Code, Title 10
    § 12406................................................................................................................ *passim*

Posse Comitatus Act ..............................................................................................................12

**CONSTITUTIONAL PROVISIONS**

California Constitution
    Article V, § 7..............................................................................................................8

United States Constitution
    Tenth Amendment ..................................................................................................8, 9
    Article I, § 8, cls. 15-16 .............................................................................................8

**OTHER AUTHORITIES**

Army National Guard, Basic Training, https://tinyurl.com/23n4kveh (basic
    training for Army National Guard) .............................................................................9

Branson-Potts & Do, *Veterans' Advocates Warn of Low Morale Amid L.A.*
    *Deployment*, L.A. Times (Sept. 11, 2025), https://tinyurl.com/yc8ymxse ..............13

The Examination of Doctor Benjamin Franklin, Before an August Assembly, Relating to the Repeal of the Stamp Act, &c. (Feb. 13, 1766) ("Suppose a military force sent into America . . . They will not find a rebellion; they may indeed make one."), https://tinyurl.com/577emuzh ................................................... 11

*Federal Agents March Through L.A. Park, Spurring Local Outrage*, N.Y. Times (July 7, 2025) ........................................................................................................ 12

Homicide Mortality, CDC (Aug. 20, 2025) https://tinyl.co/3mbc; *Dallas ICE Office Shooting Updates: Detainee Killed and 2 Others Wounded*, N.Y. Times (Sept. 24, 2025), https://tinyl.co/3mbR ........................................................... 14

Orozco Flores et al., *The Effects of Recent Federal Immigration Enforcement on California's Private Sector Employment*, U.C. Merced Community & Labor Ctr. (Aug. 2025), https://tinyl.co/3cKl ............................................................ 13

Presidential Memorandum, Department of Defense Security for the Protection of Department of Homeland Security Functions (June 7, 2025), https://tinyl.co/3hFo ........................................................................................................................ 7

Sfondeles & Armentrout, *Trump floats using Chicago, other Democrat-led cities for military training, says troops coming 'very soon,'* Chicago Sun Times (Sept. 30, 2025) ................................................................................................ 6, 15

Shawn Hubler, *Trump's National Guard Troops Are Questioning Their Mission in L.A.*, N.Y. Times (July 16, 2025), https://tinyurl.com/bd7v8ree .............................. 13

Watson & Weber, *What to Know About the Troops and Federal Agents in LA's MacArthur Park*, Associated Press (July 7, 2025), https://tinyurl.com/mvsjm34m ................................................................................ 12

## INTRODUCTION

President Trump's unlawful federalization of Oregon's National Guard is his latest attack on our nation's foundational tradition of keeping the military out of civilian affairs. Defendants' campaign to militarize America's cities began in California, where in early June, President Trump seized control of the State's National Guard troops and deployed them to conduct civilian law enforcement activities throughout southern California. California has suffered continuous irreparable harm as a result of Defendants' federalization and deployment of National Guard troops into its communities, including harm to its sovereign interests and police powers, the physical and economic well-being of its residents, and the morale of its National Guard troops and their families. These same irreparable injuries will befall Oregon and Portland if Defendants' illegal federalization order is allowed to be carried out.

Defendants' federalization order also proves that they believe they have carte blanche to deploy National Guard troops anywhere in the country, for virtually any reason. Defendants did not even attempt to establish that the situation on the ground in Portland satisfies any of the predicates set forth in 10 U.S.C. section 12406 before they federalized Oregon's National Guard troops. Instead, Defendants claimed that the federalization order was a "further implementation" of the same June 7, 2025 Presidential Memorandum that they relied upon to federalize California's National Guard troops almost four months earlier, Complaint at ¶ 58 (Sept. 28, 2025) ECF No. 1, based on the unsupported assertion of Department of Homeland Security Secretary Noem. This confirms that Defendants view the June 7 Memorandum as an unlimited authorization to federalize any State's National Guard troops and deploy them whenever and wherever they choose, regardless of whether the current circumstances in the targeted State establish a rebellion, invasion, or inability to execute the laws. And if there is any doubt that

5

BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS *AMICI CURIAE* ISO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (Case No. 3:25-cv-01756-SI)

Defendants will continue to federalize and deploy National Guard troops in defiance of 10 U.S.C. section 12406's strictures, one need look no further than President Trump's recent proclamation that cities he considers to be "dangerous" should be used "as training grounds" for the military.  Sfondeles & Armentrout, *Trump floats using Chicago, other Democrat-led cities for military training, says troops coming 'very soon,'* Chicago Sun Times (Sept. 30, 2025), https://tinyl.co/3mD5.  This Court's intervention is necessary not only to prevent irreparable harm to Oregon and Portland, but also to protect every other American State from becoming the next "training ground" for Defendants' dangerous, unprecedented, and unlawful experiment in militarized law enforcement.

## IDENTITY AND INTERESTS OF *AMICI CURIAE*

As the first State to be subjected to Defendants' federalization and deployment of its National Guard troops without the consent of its Governor, California has a unique understanding of the harm caused by Defendants' unlawful federalization orders.  The deployment of federalized National Guard troops in California continues today, as does the harm that California has endured to its sovereign interests and police powers, the physical and economic well-being of its residents, and the morale of its National Guard troops and their families.

Moreover, Defendants are using the same June 7 Memorandum that they relied on to federalize California's National Guard to justify their federalization of Oregon's National Guard. Because California and Governor Newsom have already suffered irreparable harm as a result of the June 7 Memorandum and remain under threat of future federalization orders, they have a significant interest in preventing Defendants from using this Memorandum as a blank check to

federalize and deploy National Guard troops irrespective of whether the situation on the ground satisfies any of the predicates set forth in 10 U.S.C. section 12406.

Accordingly, California and Governor Newsom support Plaintiffs' efforts to restore control and command of Oregon's National Guard and share their experience as a warning of the harms caused by the unlawful deployment of federalized National Guard troops.

## ARGUMENT

I.  **CALIFORNIA'S EXPERIENCE ILLUSTRATES THE IRREPARABLE HARM CAUSED BY DEFENDANTS' UNLAWFUL DEPLOYMENT OF FEDERALIZED TROOPS.**

California's experience as the first State to be subjected to President Trump's deployment of the National Guard without its Governor's consent serves as a warning of the harm caused by a continuous federal military presence in a State.  For nearly four months, federalized National Guard troops have been deployed in California's communities.  In his June 7, 2025 Memorandum, issued in response to events that took place in Los Angeles on June 6 and 7, President Trump authorized Defense Secretary Hegseth to "call[] into Federal service . . . at least 2,000 National Guard personnel . . . for 60 days" or longer.  Presidential Memorandum, Department of Defense Security for the Protection of Department of Homeland Security Functions (June 7, 2025), https://tinyl.co/3hFo.  In the following days, Secretary Hegseth ordered the federalization of California's National Guard and deployed troops throughout Southern California for 60 days, through August 6, 2025.  One day before the original federalization order was set to expire, Secretary Hegseth issued a new order deploying 300 federalized California National Guard troops for an additional 90 days, through November 5, 2025.  DA Activation Order 004-25 12406, *Newsom, et al., v. Trump, et al.*, No. 3:25-cv-04870-CRB ("*Newsom v. Trump*") (Aug. 6, 2025) ECF No. 140-2.  In California's lawsuit, Defendants maintain that the current deployment in California is authorized by the original June 7 Memorandum, without

7

BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS *AMICI CURIAE* ISO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (Case No. 3:25-cv-01756-SI)

need for any further showing that one of the conditions in 10 U.S.C. section 12406 has been met. Defs' Response Br. re: Jurisdiction, *Newsom v. Trump* (Sept. 5, 2025) ECF No. 190. And now, Defendants are using that same June 7 Memorandum to attempt to justify federalizing and deploying National Guard troops into Oregon's communities with nothing beyond a bare assertion that federal troops are needed. Ex. 2 to Compl. (Sept. 28, 2025) ECF No. 1-2.

Deploying California's National Guard has irreparably harmed the State and Governor Newsom, in a manner likely to recur whenever the military is deployed domestically without the consent of the State's Governor. These same irreparable injuries will be inflicted upon Plaintiffs absent this Court's intervention.

### A. Defendants' Unlawful Federalization Orders Irreparably Injure States' Sovereign Rights.

*First*, Defendants' wresting control of the National Guard is a stark violation of States' sovereign rights and their Governors' roles as commander in chief of their Guards. *See* Cal. Const. art. V, § 7; *see Bredesen v. Rumsfeld*, 2005 U.S. Dist. LEXIS 34876, at * 33-34 (M.D. Tenn. Sept. 7, 2005) (finding that Governor of Tennessee "made a strong showing of immediate and irreparable harm" to his powers as commander in chief of the Tennessee Air National Guard based on Secretary of Defense's recommendation to remove eight aircraft from the National Guard resulting "in the loss of hundreds of National Guard positions in the State of Tennessee"). Indeed, where Defendants' federalization of National Guard troops is not authorized by 10 U.S.C. section 12406, Defendants have unconstitutionally commandeered members of States' forces in contravention of the Constitution's Militia Clauses, *see* U.S. Const. art. I, § 8, cls. 15-16, and the Tenth Amendment, *see generally Printz v. United States*, 521 U.S. 898, 930 (1997). States plainly suffer irreparable harm when their own militia is depleted to serve an unlawful federal mission—including because those troops are diverted from the critical work they perform

for the State.  *See, e.g.,* Eck Decl., ¶¶ 47-50, *Newsom v. Trump* (June 10, 2025) ECF No. 8-3; Supp. Eck Decl., ¶¶ 3-15, *Newsom v. Trump* (June 12, 2025) ECF No. 39-2; Brief of Bipartisan Former Governors as *Amici Curiae* in Support of Plaintiffs-Appellees, *Newsom v. Trump*, No. 25-3727 (9th Circ. Sept. 9, 2025) Dkt. 69.1 at 10-13; Brief of Amici States as *Amici Curiae* in Support of Plaintiff-Appellees' Answering Brief, *Newsom v. Trump*, No. 25-3727 (9th Cir. Sept. 9, 2025) Dkt. 93.1 at 22-30.  Additionally, federalized troops usurping traditional law enforcement functions undermines States' police powers guaranteed by the Tenth Amendment. *United States v. Morrison*, 529 U.S. 598, 618-19 (2000) (the reservation of police powers to the States is "one of the few principles that has been consistent since the [Constitution] was adopted").  Violations of sovereignty are irreparable injuries because they "cannot be economically quantified, and thus cannot be monetarily redressed." *Kentucky v. EPA*, 2023 WL 11871967, at *4 (6th Cir. July 25, 2023) (quoting *Kentucky v. Biden*, 23 F.4th 585, 611-12 n.19 (6th Cir. 2022)).  As is the case for California and Governor Newsom, Defendants' intrusion into Oregon's sovereignty and police power interferes with the constitutional balance of power between the federal and state governments.

> **B.  Federalization and Deployment of National Guard Troops Severely Infringes States' Police Powers.**

*Second*, mobilizing National Guard units to fill roles traditionally held by local law enforcement harms the State's ability to manage law enforcement operations and protect public safety.  National Guard troops receive training in how to be a soldier—rather than training in civilian law enforcement matters such as criminal procedure, civil rights, and de-escalation—and they are expected to follow that training when called into military duty.  *See* Army National Guard, Basic Training, https://tinyurl.com/23n4kveh (basic training for Army National Guard); Amici Curiae Brief of Former U.S. Army and Navy Secretaries and Retired Four-Star Admirals

and Generals, 7, *Newsom v. Trump* (June 11, 2025) ECF No. 31-1 ("Personnel in the U.S. military . . . do not receive extensive training on how to operate safely and effectively in the context of domestic law enforcement. Our longstanding tradition of entrusting domestic law enforcement to local, state, and federal law enforcement personnel has . . . allowed the U.S. military to remain focused on its core mission.").

On the other hand, state and local law enforcement agencies have expertise, extensive training, and processes in place for responding to crowd control, civil disturbances, or other civilian law enforcement functions. *See* Decl. of Daniel Randolph ¶¶ 7-9, 17, 20, 23, *Newsom v. Trump* (June 19, 2025) ECF No. 87-4 (describing Los Angeles Police Department's "experience in dealing with spontaneous protests, such as the mass George Floyd protests" in May and June 2020 and explaining that it "has since trained its personnel on updated crowd management and crowd control techniques in order to facilitate peaceful protests and attempt to de-escalate tense, hostile and potentially violent situations"); Decl. of Sean Duryee ¶¶ 5, 6, 8, 9, *Newsom v. Trump* (June 19, 2025) ECF No. 87-3 (explaining that California Highway Patrol, along with local law enforcement, adequately managed and responded to the June 14, 2025 "No Kings Protest" without the Guard). The presence of the Guard poses a challenge to law enforcement because there are difficulties maintaining clear communications and unified command where National Guard members "are not familiar with the rules of engagement, the laws of arrest, or rules and policy regarding the use of force in policing and domestic law enforcement." Decl. of Daniel Randolph ¶ 20, *Newsom v. Trump* (June 19, 2025) ECF No. 87-4. Not only are the federalized troops not appropriately prepared to serve in a civilian law enforcement capacity, their presence taxes local law enforcement and interferes with their ability to protect the public.

### C. Deploying Federalized National Guard Troops Injures States' Interests in Maintaining Peace and Order in their Communities.

*Third*, deploying troops escalates tensions in communities and harms States' interests in maintaining stable communities. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) (recognizing a state "quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general"). Deploying federalized National Guard troops domestically sows chaos and fear, and can spur unrest rather than solve problems. It is no surprise that deploying military troops into communities escalates tensions, as the domestic use of the military has long been recognized as antithetical to American values. *See, e.g.*, The Examination of Doctor Benjamin Franklin, Before an August Assembly, Relating to the Repeal of the Stamp Act, &c. (Feb. 13, 1766) ("Suppose a military force sent into America . . . They will not find a rebellion; they may indeed make one."), https://tinyurl.com/577emuzh.

California's communities experienced these injuries firsthand following Defendants' federalization and deployment of California's National Guard. When troops were initially mobilized to Los Angeles, tensions heightened and arrests increased, necessitating additional resources from the California Highway Patrol. Decl. of Joseph Zizi ¶ 12, *Newsom v. Trump* (June 16, 2025) ECF No. 77-3. And once federalized National Guard troops began participating in immigration enforcement raids throughout Southern California, news coverage of the troops' presence at one enforcement operation in Carpinteria, California sparked protests at a separate enforcement operation in Camarillo, California. *See* Trial Tr. 130:2-4, *Newsom v. Trump* (Aug. 11, 2025) ECF No. 162. Rather than quelling civil unrest, the presence of military troops on the streets of Los Angeles only inflamed protests further. Decl. of Brian Olmstead ¶¶ 12-14, *Newsom v. Trump* (June 10, 2025) ECF No. 8-2.

11

To the extent Defendants argue that the number of troops deployed in Oregon undermines any injury to the community those troops may cause, this argument fundamentally misunderstands the harms that occur the moment an armed military force of any size is deployed domestically. Whether the troops number in handfuls, hundreds, or thousands, their presence inflames tensions in communities when residents perceive an unwanted, militarized police force in their community. Moreover, the 200 troops that Defendants are attempting to federalize and deploy in Oregon are more than enough to escalate tensions or violate the Posse Comitatus Act. As a reference point, a force of 200 soldiers is more than two times greater than the approximately 80 soldiers who participated in the widely publicized Department of Homeland Security operation in Los Angeles' MacArthur Park, titled Operation Excalibur, which was intended "to demonstrate, through a show of presence, the capacity and freedom of maneuver of federal law enforcement within the Los Angeles Joint Operations Area." Trial Tr. 35:19-23, 37:15-18, *Newsom v. Trump* (Aug. 11, 2025) ECF No. 162. There, Defendants deployed the federalized National Guard troops, "dozens of federal officers," and "17 Humvees [and] four tactical vehicles" to a Los Angeles park in a densely populated neighborhood. Watson & Weber, *What to Know About the Troops and Federal Agents in LA's MacArthur Park*, Associated Press (July 7, 2025), https://tinyurl.com/mvsjm34m. Accordingly, the unlawful presence of any number of federalized National Guard troops escalates tensions in communities and harms the States where the deployments occur.

### D.     Defendants' Federalization Orders Irreparably Harm States' Economies.

*Fourth*, the militarized presence of National Guard troops harms States' economies by stoking fear and causing the public to stay home, fail to report for work, and avoid areas where the military is deployed. For example, City of Los Angeles Mayor Karen Bass described the

scene of Operation Excalibur as looking like "a city under siege, under armed occupation" and how "a city looks before a coup."  Cowan & Dwyer, *Federal Agents March Through L.A. Park, Spurring Local Outrage*, N.Y. Times (July 7, 2025), https://tinyurl.com/ye6dvrec (noting that a convenience store owner closed his store near MacArthur Park due to the show of military force).  An August 2025 study reflected that the number of people reporting to work in California's private sector decreased by 3.1% in June 2025 and by 4.9% in July 2025, directly coinciding with the deployment of troops to Southern California and their participation in immigration enforcement actions.  Orozco Flores et al., *The Effects of Recent Federal Immigration Enforcement on California's Private Sector Employment*, U.C. Merced Community & Labor Ctr. (Aug. 2025), https://tinyl.co/3cKl.  The ongoing military presence in downtown Los Angeles has sharply decreased consumer activity and harmed businesses so severely that some may never recover.  Decl. of Carlos A. Singer ¶¶ 7-10, *Newsom v. Trump* (Sept. 2, 2025) ECF No. 183-3; Decl. of Oliver Alpuche ¶ 10, *Newsom v. Trump* (Sept. 2, 2025) ECF No. 183-6 (noting a 40% drop in business for a downtown Los Angeles business owner since the federalization began).  Since the deployment, participation in community events and festivals has declined, and normally vibrant areas are empty.  Decl. of Oliver Alpuche ¶¶ 4, 13-14, *Newsom v. Trump* (Sept. 2, 2025) ECF No. 183-6 (reporting 2,000 fewer attendees than in prior years at the annual DTLA Proud Festival).  The result is less income for businesses and less tax revenue for the State.  The economies of Oregon and Portland will similarly suffer as a result of Defendants' unlawful federalization order.

### E. The Morale of States' National Guard Troops Suffer When They Are Federalized and Deployed Domestically.

*Fifth*, the morale of National Guard troops and their families are depleted when troops are deployed as a police force on the streets of their own communities.  Branson-Potts & Do,

*Veterans' Advocates Warn of Low Morale Amid L.A. Deployment*, L.A. Times (Sept. 11, 2025), https://tinyurl.com/yc8ymxse; Shawn Hubler, *Trump's National Guard Troops Are Questioning Their Mission in L.A.*, N.Y. Times (July 16, 2025), https://tinyurl.com/bd7v8ree; Decl. of Brandi Jones ¶ 19, *Newsom v. Trump* (Sept. 2, 2025) ECF No. 183-7 (describing negative impact of deployment to Los Angeles on morale of military families). This strain on morale further threatens the readiness of States' National Guard troops, upon whom States routinely rely to carry out critical state functions, including responding to natural disasters and other emergencies.

The harms California and Governor Newsom have endured as a result of Defendants' federalization of the California National Guard lay bare the consequences of deploying the military without the Governor's consent and serve as illustrations of the harm that Oregon faces and will face should Defendants not be restrained from federalizing and deploying National Guard troops into its communities.

**II.     DEFENDANTS' FEDERALIZATION OF OREGON'S NATIONAL GUARD PROVES THEY VIEW THE JUNE 7 MEMORANDUM AS A BLANK CHECK FOR DEPLOYING MILITARIZED POLICE FORCES INTO OUR COMMUNITIES.**

By relying on the same June 7, 2025 Memorandum to federalize and deploy Oregon's National Guard that they relied upon to federalize California's National Guard troops nearly four months ago, Defendants concede that they view the June 7 Memorandum as providing unbounded, indefinite authority to federalize and deploy National Guard troops pursuant to 10 U.S.C. section 12406 whenever or wherever they wish, without needing to provide any new justification that would satisfy the predicates set forth in 10 U.S.C. section 12406. If Defendants are allowed to take actions consistent with this position, a chilling precedent will be set whereby Defendants will be empowered to deploy National Guard troops anywhere in the country, at any

time, for virtually any reason, including overtly partisan ones.[1] *See* Ltr. re Developments Bearing on Pending Appeal and En Banc Consideration, *Newsom v. Trump*, No. 25-3727 (9th Cir. Sept. 29, 2025) Dkt. 116.1 (drawing Court's attention to use of June 7 Memorandum to justify federalization of 200 members of Oregon's National Guard).

To the extent there was any remaining doubt that Defendants are ready and willing to ignore the constraints of 10 U.S.C. section 12406, President Trump made this clear in his recent address to the military's top officials, during which he stated that cities he considers to be "dangerous" should be used "as training grounds" for the military. Sfondeles & Armentrout, *Trump floats using Chicago, other Democrat-led cities for military training, says troops coming 'very soon,'* Chicago Sun Times (Sept. 30, 2025), https://tinyl.co/3mD5. These statements show that relief is necessary not only to protect Oregon and Portland from irreparable harm, but also to prevent Defendants' unlawful and unjustified deployments from continuing across the country.

## CONCLUSION

Plaintiffs' Motion for a Temporary Restraining Order should be granted.

---

[1] The only States where the President has deployed federalized troops without the Governor's consent are Oregon and California; he has not done so in any Republican-led State, despite homicide rates far surpassing those of Oregon and California, and Texas being the only state where multiple shootings at ICE facilities have taken place this year. *See* Homicide Mortality, CDC (Aug. 20, 2025) https://tinyl.co/3mbc; *Dallas ICE Office Shooting Updates: Detainee Killed and 2 Others Wounded*, N.Y. Times (Sept. 24, 2025), https://tinyl.co/3mbR.

Date: October 2, 2025

Respectfully submitted,

**ROB BONTA**
Attorney General of California
MICHAEL L. NEWMAN
THOMAS S. PATTERSON
Senior Assistant Attorneys General
ANYA M. BINSACCA
Supervising Deputy Attorney General
JANE REILLEY
Deputy Attorney General

*/s/ Barbara Horne-Petersdorf*
BARBARA HORNE-PETERSDORF
Deputy Attorney General
  300 S. Spring St.
  Los Angeles, CA 90013
  Telephone: (213) 269-6667
  E-mail: Barbara.HornePetersdorf@doj.ca.gov

BRIEF FOR THE STATE OF CALIFORNIA AND GOVERNOR NEWSOM AS *AMICI CURIAE* ISO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (Case No. 3:25-cv-01756-SI)