DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General
DUSTIN BUEHLER
Special Counsel
SCOTT KENNEDY #T25070201, D.C. Bar #1658085
BRIAN SIMMONDS MARSHALL #196129
THOMAS CASTELLI #226448
IAN VAN LOH #225163
RACHEL SOWRAY #095159
Senior Assistant Attorneys General
ALEXANDER C. JONES #213898
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Scott.Kennedy@doj.oregon.gov

*Counsel for the State of Oregon*

[Additional counsel to appear on signature page]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| STATE OF OREGON, the CITY OF PORTLAND, and the STATE OF CALIFORNIA,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; PETE HEGSETH, in his official capacity as Secretary of Defense; U.S. DEPARTMENT OF DEFENSE; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendants. | Case No. 3:25-cv-01756-IM<br><br>MOTION FOR A SECOND TEMPORARY RESTRAINING ORDER |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

MOTION ......................................................................................................................................... 1

MEMORANDUM OF LAW ........................................................................................................... 1

I. INTRODUCTION ............................................................................................................... 1

II. FACTUAL BACKGROUND SINCE FRIDAY'S HEARING ........................................... 2

III. JURISDICTION .................................................................................................................. 3

IV. ARGUMENT ....................................................................................................................... 4

    A. A second TRO meets the traditional factors for preliminary relief. ........................ 4

        1. The State of Oregon, City of Portland, and State of California are likely to succeed on their claims. ............................................................ 4

            a. Defendants' actions are *ultra vires,* exceed the President's authority under 10 U.S.C. § 12406, and violate the Administrative Procedure Act. ...................................... 4

            b. Because the requirements of 10 U.S.C. 12406 have not been met, this new deployment violates the Tenth Amendment. ................................................................................. 7

        2. Without the entry of a TRO Oregon and Portland will suffer irreparable harm. ......................................................................................... 8

        3. Without the entry of a TRO California will suffer irreparable harm. ............................................................................................................. 9

    B. The balance of equities and the public interest weigh in favor of issuing a TRO. ............................................................................................................... 10

    C. This Court should issue a second TRO to prevent circumvention of the first TRO. ............................................................................................................ 12

    D. This Court should waive the requirement of a bond or require only a nominal bond. .................................................................................................... 13

V. CONCLUSION .................................................................................................................. 13

# MOTION[1]

The State of Oregon and the City of Portland, now joined by the State of California, move under Federal Rule of Civil Procedure 65(b) for a temporary restraining order ("TRO") and stay of the active deployment of federalized members of the National Guard of California in the State of Oregon. In the alternative, the State and the City move under Federal Rule of Civil Procedure 62(d) to modify this Court's October 4, 2025, TRO to prohibit the relocation or deployment of any National Guard under Defendants' command (*i.e.*, Title 10 status) within the State of Oregon. The Plaintiffs request that the Court waive the requirement for security or require only a nominal bond.

# MEMORANDUM OF LAW

## I. INTRODUCTION

Yesterday, this Court recognized that the legal principles at stake in this case "go[] to the heart of what it means to live under the rule of law in the United States." Opinion & Order Granting Mot. for Temporary Restraining Order ("Order"), ECF 56 at 2. Applying those principles, this Court concluded that Defendants likely lacked authority to federalize Oregon National Guard members and ordered Defendants to halt federalization for 14 days. Defendants filed a notice of appeal last night (Ntc. of Appeal, ECF 57), and they have now asked the Ninth Circuit to stay the effect of this Court's decision.

Not content with this Court's or the Ninth Circuit's judgment, Defendants are now in the process of circumventing this Court's Order. After this Court ruled that 10 U.S.C. § 12406 could not justify federalizing the *Oregon* National Guard to deploy them to Portland, Defendants have deployed members of the *California* National Guard to Portland—servicemembers who were federalized under that very same Title 10 authority for deployment in Los Angeles. That redeployment is illegal: Setting aside whether the underlying federalization order from August violated Section 12406, the federalization order clearly did not contemplate the use of California

---

[1] Conferral is not required under L.R. 7-1(a)(1) and Defendants' counsel will be served by ECF.

Page 1 -    MOTION FOR A SECOND TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

troops for completely unrelated activity in Oregon. "[T]he President's determination was simply untethered to the facts." Order at 23. And, as this Court has already recognized, a National Guard deployment from any state would work irreparable harm on the State and City, and the public interest tips sharply toward temporarily restraining any such deployment. In fact, the harms and public interest considerations here have only become more acute since yesterday, as California, too, is irreparably harmed by Defendants' deployment of its National Guard to a City over 800 miles away from Los Angeles—where they were initially deployed four months ago based on facts not at issue in this case.

## II. FACTUAL BACKGROUND SINCE FRIDAY'S HEARING

At 4:30 p.m. on Saturday, October 4th, this Court issued a Temporary Restraining Order ("TRO") enjoining Defendants from ordering the federalization and deployment of Oregon National Guard members to Portland. Defendants noticed their appeal, and they have moved in the Ninth Circuit to stay this Court's order today. Plaintiffs have filed an opposition to that motion.

In the early morning hours after midnight on October 5, 2025, 101 federalized members of the California National Guard landed in Oregon at the Portland Air National Guard Base. Supp. Decl. of Brigadier General Alan R. Gronewald, Decl. Paul S. Eck ¶¶ 17–19. An additional 99 federalized California National Guard troops will arrive in Oregon around 4 pm this afternoon. *Id.*; *see also Newsom*, 141 F.4th at 1040 (noting that the current federalization of California's National Guard is under § 12406). It is readily apparent that these members of the California National Guard have been redeployed to carry out the same mission that, just yesterday, the Court held was not a satisfactory basis for sending in federalized troops under 10 U.S.C. § 12406.[2] In other words, having been enjoined from federalizing and deploying 200

---

[2] *See* Sophia Bollag, *Trump Dispatching 300 California National Guard Troops to Portland, Newsom Says*, S.F. Chron. (Oct 5, 2025, at 10:52 AM PT), https://www.sfchronicle.com/politics/article/california-national-guard-portland-trump-21085480.php; Press Release, Gov. Gavin Newsom, Governor Newsom to Sue, Urges Americans to Speak Out on Trump's "Breathtaking Abuse of Power" with Cross-State Guard

Page 2 -   MOTION FOR A SECOND TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Oregon National Guard members to Portland, Defendants have prepared to deploy at least 200 California National Guard members to conduct the same unlawful mission in Portland under the same inadequate authority.

### III. JURISDICTION

This Court has jurisdiction under either Federal Rule of Civil Procedure 65(b) or 62(d), or both, the grant the requested relief here.

Under FRCP 65(b), the Court may issue a TRO on an expedited basis. Defendants may argue here that the Court lacks jurisdiction because Defendants filed a notice of appeal of this Court's TRO order yesterday. ECF 57.[3] Plaintiffs disagree. Under FRCP 62(d), this Court retains jurisdiction to enter a further order or modification of the original order to enjoin discreet actions to preserve the status quo—even if the matter is on appeal. *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *see also Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir.1994) (district court retained authority to issue an amended order to clarify its original injunction and supervise compliance, even though an appeal had already been taken from the original order). Thus, this Court retains jurisdiction to provide the requested relief here, notwithstanding the fact that Defendants have filed a notice of appeal from this Court's Order. Moreover, this Court has not considered the changed circumstances of California's involvement.

To be clear, the parties disagree about whether the Ninth Circuit has jurisdiction to entertain that notice of appeal at this stage, given the careful limits that this Court placed on its

---

Deployment (Oct. 5, 2025), https://www.gov.ca.gov/2025/10/05/governor-newsom-to-sue-urges-americans-to-speak-out-on-trumps-breathtaking-abuse-of-power-with-cross-state-guard-deployment/.

[3] This case is in its infancy, and the Ninth Circuit has not yet acted on Defendants just-filed motion for stay of the TRO. This case is thus entirely unlike the "complicated and fragmented procedural posture" in *Newsom v. Trump* where the trial Court was uncertain about its jurisdiction to issue a further injunction after multiple happenings in the case and when two separate appeals had already been filed to the Ninth Circuit, both of which the Ninth Circuit had acted on. *Newsom v. Trump*, No. 25-cv-04870-CRB, 2025 WL 2609917 (N.D. Cal. Sept. 9, 2025) (staying motion for preliminary injunction)

Page 3 -   MOTION FOR A SECOND TEMPORARY RESTRAINING ORDER

TRO, and the fact that TROs are not ordinarily reviewable.[4] However, it is not necessary for this Court to resolve that disagreement for purposes of this second TRO motion. Whether or not the Ninth Circuit has jurisdiction, this Court plainly has jurisdiction to issue further orders to maintain the status quo in the meantime.

## IV.    ARGUMENT

**A.    A second TRO meets the traditional factors for preliminary relief.**

    **1. The State of Oregon, City of Portland, and State of California are likely to succeed on their claims.**

        **a. Defendants' actions are *ultra vires*, exceed the President's authority under 10 U.S.C. § 12406, and violate the Administrative Procedure Act.[5]**

Defendants' plan to deploy federalized troops to Portland under 10 U.S.C. § 12406—regardless of where they are from—fails to meet the requirements of that statute. As the Court held yesterday, none of the prerequisites under § 12406 exist in Portland. Order at 16–26. The Department of War's order to deploy therefore exceeds any authority, is *ultra vires*, and must be enjoined.

The President may only "call into Federal service members and units of the National Guard of any State in such numbers as he considers necessary to repel the invasion, suppress the

---

[4] Plaintiffs' position is that the Ninth Circuit should dismiss Defendants' appeal and decline to consider Defendants' stay motion because it lacks jurisdiction over the appeal of a TRO. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 762 (9th Cir. 2018) ("Ordinarily, a TRO is not an appealable order."). Only if a TRO "'possesses the qualities of a preliminary injunction,' is it reviewable under 28 U.S.C. § 1292(a)(1)." *Newsom v. Trump*, 141 F.4th 1032, 1043 (9th Cir. 2025) (citation omitted). In assessing whether a TRO is best construed as an appealable preliminary injunction, the Ninth Circuit evaluates whether "an adversary hearing has been held, and [whether] the court's basis for issuing the order [was] strongly challenged." *E. Bay*, 932 F.3d at 762 (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002)). "Further, a key distinction between a 'true' TRO and an appealable preliminary injunction is that a TRO may issue without notice and remains in effect for only 14 days (or longer if the district court finds 'good cause' to extend it)." *Id.* at 762 (quoting Fed. R. Civ. P. 65(b)).

Here, the TRO does not possess the qualities of a preliminary injunction and is not appealable. Crucially, although the district court issued the TRO after an adversarial hearing, the district court ordered that the TRO would expire in 14 days on October 18, 2025. Order at 31. That 14-day expiration distinguishes this case from *Newsom*, where the Ninth Circuit determined it had jurisdiction.

[5] Plaintiffs intend to amend their complaint to accommodate these new facts.

Page 4 -    MOTION FOR A SECOND TEMPORARY RESTRAINING ORDER

rebellion, or execute those laws." 10 U.S.C. § 12406. The Court found yesterday that no such servicemembers were required for those purposes in Portland. There is no rebellion in Portland. There are no laws that defendants are unable to execute with regular forces in Portland. Defendants have suggested no need to deploy servicemembers elsewhere in Oregon.

Defendants will surely argue that the Ninth Circuit has already concluded that the President likely acted within his authority in federalizing the California National Guard in June, *see Newsom v. Trump*, 141 F.4th 1032, 1052 (9th Cir. 2025), and so they are now entitled to use those federalized National Guard members for any purpose, including to send them to Portland. But the President's determination to federalize the California National Guard was made nearly four months ago, based on entirely different facts at a different location, and the Ninth Circuit's preliminary determination that § 12406 was met at that time was based only on the facts before it. *Id.* at 1054. Simply put: the facts have changed. And President Trump's June 7 memorandum is not the blank check Defendants pretend.

To the extent that Defendants no longer believe that those servicemembers are necessary in California, they have no statutory basis to continue their federalization and deployment. 10 USC § 12406 requires the mission to match the basis for the federalization—by its terms, that narrow congressional authorization allows the president to call up "such numbers as he considers necessary to repel *the* invasion, suppress *the* rebellion, or execute *those* laws." *Id.* (emphasis added); *see also* Order at 21–22 ("but violence in a different state . . . do[es] not provide a colorable basis to invoke Section 12406(3). . . . In other words, violence *elsewhere* cannot support troop deployments *here*[.]"). Whatever the purpose for federalizing the California national guard in the first place, the present mission to Portland has nothing to do with it.[6]

---

[6] Also concerning is the fact that the Court in *Newsom v. Trump* found that these California National Guard members were improperly trained in that they were instructed that they could engage in certain law enforcement activities proscribed by the Posse Comitatus act. *Newsom v. Trump*, No. 25-cv-04870-CRB, 2025 WL 2501619, at *24 (N.D. Cal. Sept. 2, 2025) ("The Court observes that Task Force 51 was expressly instructed that it could engage in certain law enforcement activities: setting up protective perimeters, traffic blockades, crowd control, and the like. . . . That instruction was incorrect. There is no exception to the Posse Comitatus Act for

Page 5 -   MOTION FOR A SECOND TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Defendants' approach to this situation, if permitted, would allow the Executive Branch to deploy troops *any* purpose *anywhere* once they were activated for *some* lawful purpose *somewhere*. The limits that Congress set under the Militia Clauses cannot be so easily circumvented.

Defendants' decision to send Guard members from California to be deployed in Oregon is thus final agency action that is "not in accordance with law" because it violates Section 12406. 5 USC 706(2)(A). The APA expressly contemplates that military orders of this nature can be reviewed through the APA: it carves out military orders only when "exercised in the field in time of war." 5 USC 551(1)(G). Alternatively, defendants' actions are reviewable and unlawful on ultra vires grounds. *See, e.g., Murphy Co. v. Biden*, 65 F.4th 1122, 1129- 1131 (9th Cir. 2023).

Even accepting arguendo that the California National Guard were properly federalized in Los Angeles in June, that does not give Defendants carte blanche to use those soldiers anywhere, for any purpose, and for any amount of time. Such a reading would read § 12406 out of existence and grant the President unlimited power to use the military as his personal police force indefinitely, so long as he had the thinnest justification at the start of the deployment. And that broad power would run directly counter to the Founders' reservation of powers over the militia to Congress, U.S. Const. art. I, § 8, cls. 15-16, and Congress's narrow delegation of that authority to the President in cases of extreme emergencies. The limits that Congress set under the Militia Clauses cannot be so easily circumvented.

And there can be no question that this is exactly the argument that Defendants' now advance. Despite claiming mere days ago that this case has "no bearing" on California's pending challenge to the federalization of its National Guard, *Newsom v. Trump*, ECF 119.1, and insisting for months that they needed California National Guard members to protect federal agents from a

---

such conduct . . ."). For the reasons stated in plaintiffs' first motion for TRO, To the extent that Federal Defendants continue to maintain that these troops can and will engage in activities that violate the PCA, 10 USC § 275, or the DOD regulations promulgated under § 275, the unlawful deployment should be enjoined as a violation of those authorities as well.

Page 6 -    MOTION FOR A SECOND TEMPORARY RESTRAINING ORDER

risk of violence in Los Angeles, Defendants have now, without notice, removed at least 200 soldiers from Los Angeles to Portland.

Section 12406's grant of power is far more limited. It grants power to federalize the state National Guard when "the President is unable with the regular forces to execute the laws of the United States," but he still may only call forth members of the National Guard to "execute those laws"—i.e., the ones he was unable to execute at the time he determined § 12406(3) was met. This means that the federalized California National Guard may only be called upon to execute the laws in the context in which the President determined on June 7 he was unable to execute: immigration laws in and around Los Angeles. Now that Defendants have apparently achieved their mission in Los Angeles, they cannot continue to hold the federalized National Guard members hostage by altering their mission and sending them to another State. Such conduct is outside the purpose for which they are federalized. If the President wishes to federalize them for a different purpose and mission, he must once again make a finding that one of § 12406's predicates is met. But that is a finding he has no colorable basis to make, as this Court has already held.

**b. Because the requirements of 10 U.S.C. 12406 have not been met, this new deployment violates the Tenth Amendment.**

For the reasons the Court explained in its Order yesterday, at pages 26–27, "Because Section 12406 defines the scope of Congress's constitutional delegation to the President to federalize the National Guard," (Order, at 16) and because, as demonstrated above, Defendants' latest efforts to send in National Guard troops under that statute do not satisfy the statutory requirements, Defendants' actions also violate the Tenth Amendment to the United States Constitution. This is true even though the guard members now being sent into Portland without satisfying 10 U.S.C. § 12406's prerequisites are from California rather than Oregon. As this Court recognized at the hearing on the first TRO, "the people of Oregon have a sovereign interest in making the determination of what the needs of the state are[,] . . . including whether they can handle their own law enforcement issues." TRO Hr'g Tr. 55–56. When the President

overrides the state's own determination on those issues, and exceeds the scope of Congress's constitutional delegation of authority to do so under § 12406, the federal Government violates Oregon's sovereign interest in determining whether National Guard intervention is necessary, regardless of where the troops come from.

### 2. Without the entry of a TRO Oregon and Portland will suffer irreparable harm.[7]

Oregon and Portland are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

First, "[a]s soon as the federalized National Guard deploys to Portland, the state of Oregon will suffer an injury to its sovereignty." Order at 29. Obviously, the California National Guard were never under the Governor of Oregon's command. But Defendants' Plan B works a different intrusion on Oregon's sovereignty: the involuntary deployment of *another* state's National Guard to Oregon to conduct functions ordinarily left to civilian law enforcement agencies. As a sovereign state, Oregon has "an interest in securing observance of the terms under which it participates in the federal system." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607–08 (1982). Action that "exceeds the National Government's enumerated powers undermines the sovereign interests of the States." *Bond v. United States*, 564 U.S. 211, 225 (2011). Here, "the people of Oregon have a sovereign interest in making the determination of what the needs of the state are," including "whether they can handle their own law enforcement issues." TRO Hr'g Tr. 55–56. In carrying out a deployment of federalized National Guard in Oregon absent authorization from Congress, and without the consent of either California or Oregon, defendants are interfering with the constitutional balance of power between the federal and state governments. Order at 27. That violation of Oregon's sovereignty is not nullified simply because defendants are spreading out the violation across two states— using control over one state's National Guard to carry out a separate, unlawful mission in another state.

---

[7] These injuries are also cognizable bases for standing.

Second, state and local law enforcement will need to expend additional resources to quell increased civil unrest that is likely to result from the Guard's mobilization. That diverts their capacity to carry out other law enforcement functions and carries an out-of-pocket financial cost. Schoening Suppl. Decl., ECF 33 ¶¶ 5–6, 11, 14 (on September 28, Portland Police Bureau incurred over $50,000 in overtime hours associated with responding to increased protests spurred by the announcement of the troop deployment, followed by over $40,000 more over the next two days); Dobson Decl., ECF 7 ¶ 30 ("Scaling resources to address protests based on the federal deployment may mean that PPB is less able to respond to regular public safety calls for service."). As this Court recognized, such "ongoing and concrete harms" to Oregon's and Portland's "law enforcement and public safety interests" are irreparable. Order at 28; *see Maryland v. King*, 567 U.S. 1301, 1303 (2012).

3. **Without the entry of a TRO California will suffer irreparable harm.[8]**

First, California's sovereign interests are irreparably harmed by sending its federalized troops to Portland. Defendants' attempt to obviate this Court's Order by sending California's federalized National Guard troops to Oregon—to carry out the actions this Court temporarily enjoined Defendants from federalizing Oregon's National Guard to do—irreparably harms California's sovereign interests. By deploying California's federalized National Guard troops to Oregon, Defendants are attempting to circumvent this Court's order temporarily restraining them from federalizing Oregon's National Guard. This is an affront to California's sovereignty in contravention of the Constitution's Militia Clauses, *see* U.S. Const. art. I, § 8, cls. 15–16, and the Tenth Amendment, *see generally Printz v. United States*, 521 U.S. 898, 930 (1997). California plainly suffers irreparable harm when the number of available troops is depleted to serve an unlawful federal mission. Moreover, federalized troops usurping traditional law enforcement functions—no matter where those functions take place—undermines California's police powers guaranteed by the Tenth Amendment. *United States v. Morrison*, 529 U.S. 598, 618–19 (2000)

---

[8] These injuries are also cognizable bases for standing.

Page 9 -    MOTION FOR A SECOND TEMPORARY RESTRAINING ORDER

(the reservation of police powers to the States is "one of the few principles that has been consistent since the [Constitution] was adopted"). Just as Oregon's state sovereignty and police powers are violated by Defendants' attempt to federalize Oregon's National Guard, California's state sovereignty and police powers are violated by Defendants' deploying California's federalized troops into Oregon.

Second, Defendants' removal of California's federalized National Guard troops from the State and deployment to Oregon irreparably harms California's ability to respond to emergencies and natural disasters. California is already harmed when its Guard is diverted from serving critical state functions, such as fighting wildfires, but there is a separate, unique harm when the federalized troops are sent hundreds of miles away, across state lines, where they are not able to quickly respond should an emergency arise that requires their support. For example, at the end of June, the President released 150 federalized troops to serve in Joint Task Force Rattlesnake, the wildfire fighting task force, to return to wildfire fighting duty. *See* Press Release, U.S. Northern Command, *Task Force 51 Releases 150 Members of the California National Guard* (July 1, 2025), https://tinyl.co/3dj3. Should a similar need arise, California will be hamstrung from utilizing these troops who are hundreds of miles away in Portland. And if Defendants can send federalized troops wherever they wish, this harm will only become more acute the farther away that California's federalized troops are sent.

B.     **The balance of equities and the public interest weigh in favor of issuing a TRO.**

Finally, the balance of equities and the public interest weigh in favor of issuing a TRO. Those "factors merge" when the government is the party to be enjoined. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The balance of equities tips sharply in Plaintiffs' favor. Plaintiffs seek to protect their sovereignty, retain control over local law enforcement and public safety, and prevent unnecessary disruption to Oregon's largest city. Plaintiffs have filed this suit to protect the basic

structure of American federalism from an alarming intrusion that was, until the events in Los Angeles just months ago, unprecedented.

The public interest analysis also encompasses California's interests. As California has already persuasively argued to this Court in its capacity as an amicus, the deployment of its National Guard is not in the public interest. As this Court ruled yesterday, states have a sovereign interest in the command of their National Guard until those guards are federalized pursuant to a lawful order. Order at 27. And just as Oregon has a sovereign interest in preventing an unlawful deployment of federalized National Guard to Portland, for the reasons described above California also has a sovereign interest in preventing an unlawful deployment of the *California* National Guard to Portland. That violation of California's sovereign interest is as weighty as the violation of Oregon's interest.

In contrast, the federal government faces no harm from an injunction. The federal government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (holding that although "[t]here is generally no public interest in the perpetuation of unlawful agency action," "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operation'"). The federal government has enforced federal law in Portland for decades without the support of active-duty military forces. It may continue to enforce such laws, including immigration laws, even with Plaintiffs' requested TRO in place.

Defendants' actions here also smack of gamesmanship. In their Opposition to Plaintiffs' Motion for Temporary Restraining Order ("Opp.") and at oral argument, Defendants requested that any injunctive relief "be narrowly tailored to apply only to Plaintiffs, and to enjoin only specific activities the Court finds are unlawful." Opp., ECF 35 at 40; TRO Hr'g Tr. 59.

Defendants never disclosed that they intended to exploit any such limitations in the Court's order to effectively nullify this Court's clear intent. To a court sitting in equity, that conduct matters.

There is no countervailing public interest in the Court declining to act in the face of the Executive Branch's defiance. "[B]ased on the current record, it is clear that any threats to federal agents and property are readily remedied—as they have been—by federal civilian law enforcement, with the support of State and local law enforcement. Therefore, this interest cannot overcome the countervailing balance of equities and public interest that weigh in favor of Plaintiffs." Order at 30 n.5. Indeed, Defendants' actions "risk blurring the line between civil and military federal power—to the detriment of this nation." Order at 30.

**C.     This Court should issue a second TRO to prevent circumvention of the first TRO.**

Federal Rule of Civil Procedure 62(d) authorizes this Court to grant additional injunctive relief "to preserve the status quo or ensure compliance with its earlier orders." *Nat'l Grange of the Order of Patrons of Husbandry v. California*, 182 F. Supp. 3d 1065, 1073 (E.D. Cal. 2016) (citing *In re Icenhower*, 755 F.3d 1130, 1138 (9th Cir. 2014); *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002); *Armstrong v. Brown*, 732 F.3d 955, 959 n.6 (9th Cir. 2013).

Here, an additional TRO is necessary to preserve the status quo and prevent defendants from circumventing this Court's order. This Court's original TRO preserves the status quo before the deployment of Guard members, preventing multiple forms of irreparable harm that would result once service members are on the ground. Mot. at 27–29 (discussing irreparable harm, including increased civil unrest requiring diversion of state and local law enforcement resources once the service members are mobilized). Fewer than 24 hours after this Court issued that order, Defendants are deploying federalized Guard members to Portland, circumventing this Court's conclusion that such deployment was unlawful. This upsets the very status quo that the Court's original TRO sought to preserve, and it threatens many of the same irreparable harms as the actions that this Court directly enjoined. It is therefore well within this Court's authority to grant

an additional TRO to shut off the avenue that Defendants are using to bypass this Court's earlier Order.

**D.     This Court should waive the requirement of a bond or require only a nominal bond.**

Plaintiffs request that the Court exercise its discretion to waive posting bond under Rule 65(c). Rule 65(c) states that a court may issue a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FRCP 65(c). "Federal courts, however, have discretion over the amount of security may even dispense with the security requirement altogether." *D.W. v. Fresenius Med. Care N. Am.*, 534 F. Supp. 3d 1274, 1289 (D. Or. 2021) (citing *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson*, 572 F.3d at 1086 (internal quotation marks omitted). As this Court has concluded, any impact on defendants from enjoining the unlawful deployment of National Guard members to Portland is "*de minimis*." Order at 29. Plaintiffs therefore request that this Court waive the requirement to post a bond, or in the alternative, that the Court require only a nominal bond.

## V.     CONCLUSION

For the foregoing reasons, the Court should issue a second TRO.

DATED October 5, 2025.

                                                               Respectfully submitted,

                                                               DAN RAYFIELD
                                                               Attorney General
                                                               BENJAMIN GUTMAN
                                                               Solicitor General
                                                               DUSTIN BUEHLER
                                                               Special Counsel

*s/ Scott Kennedy*
SCOTT KENNEDY #T25070201, D.C. Bar #1658085
BRIAN SIMMONDS MARSHALL #196129
THOMAS CASTELLI #226448
IAN VAN LOH #225163
RACHEL SOWRAY #095159
Senior Assistant Attorneys General
ALEXANDER C. JONES #213898
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
971-673-1880
Scott.Kennedy@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Thomas.Castelli@doj.oregon.gov
Ian.VanLoh@doj.oregon.gov
Rachel.Sowray@doj.oregon.gov
Alex.Jones@doj.oregon.gov
Derek.Olson@doj.oregon.gov

*Counsel for the State of Oregon*


ROBERT TAYLOR #044287
Portland City Attorney

*s/ Caroline Turco*
CAROLINE TURCO #083813
Senior Deputy City Attorney
NAOMI SHEFFIELD #170601
Chief Deputy City Attorney
1221 SW Fourth Avenue
Fourth Floor, Room 430
Portland, OR 97204
Tel: (503) 823-4047
Fax: (503) 823-3089
Caroline.Turco@portlandoregon.gov
Naomi.Sheffield@portlandoregon.gov

*Counsel for the City of Portland*

**ROB BONTA**
Attorney General of California

*s/ Barbara Horne-Petersdorf*
Michael L. Newman
Thomas S. Patterson
Senior Assistant Attorneys General
Anya M. Binsacca
Marissa Malouff
James E. Stanley
Supervising Deputy Attorneys General
Jesse Basbaum
Barbara Horne-Petersdorf
Jane Reilley
Meghan H. Strong
Deputy Attorneys General
455 Golden Gate Ave.
San Francisco, CA 94102
Telephone: (415) 510-3877
E-mail: Meghan.Strong@doj.ca.gov

*Counsel for the State of California*