DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General
DUSTIN BUEHLER
Special Counsel
SCOTT KENNEDY #T25070201, D.C. Bar #1658085
BRIAN SIMMONDS MARSHALL #196129
THOMAS CASTELLI #226448
IAN VAN LOH #225163
RACHEL SOWRAY #095159
LEANNE HARTMANN #T25070201, Mass. BBO #667852
Senior Assistant Attorneys General
ALEXANDER C. JONES #213898
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Scott.Kennedy@doj.oregon.gov

*Counsel for the State of Oregon*

[Additional counsel to appear on signature page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF OREGON, et al.,<br><br>　　　　Plaintiffs<br><br>　　v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, et al.,<br><br>　　　　Defendants. | Case No. 3:25-cv-01756-IM<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER |

Page 1 -   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## I. INTRODUCTION

The Court should deny Defendants' motion to dissolve or, alternatively, to stay ("Motion to Dissolve") the Second Temporary Restraining Order ("Second TRO"). Plaintiffs acknowledge that the Ninth Circuit issued an order staying this Court's First TRO pending appeal ("Stay Order"), but the Stay Order is not final. Less than two hours after that decision issued, a Ninth Circuit judge, *sua sponte*, requested a vote on whether the case should be reheard en banc, and the Ninth Circuit has ordered that simultaneous briefing be filed tomorrow. Until there is an en banc vote, it would be legal error for this Court to construe the panel's non-final decision as a "significant change in the law" warranting dissolution of the Second TRO. Had Defendants appealed the Second TRO, the relief they now seek from this Court would already be before the Ninth Circuit. But they chose not to appeal the Second TRO, which raises factual and legal issues that extend far beyond the Stay Order. Now, in their rush to file their Motion to Dissolve, Defendants have misconstrued the finality of the Ninth Circuit proceedings, failing to carry their burden for dissolution of the Second TRO.

Alternatively, even if the Court construes the Stay Order as a "significant change in law," under the motion to dissolve standard, the Court should, at most, stay in part the Second TRO rather than dissolve it altogether.[1] Defendants originally mobilized 200 servicemembers for the Portland mission. But Defendants never provided a justification to this Court for deploying additional servicemembers from California and Texas, and their attempt raises difficult questions of federalism that the Stay Order had no occasion to address. That is, the Court's Second TRO involved different parties, different facts, and different requests for relief. Because Defendants did not appeal the Second TRO, the Ninth Circuit has not ruled on that TRO, and Defendants have implicitly conceded that there is no likelihood of imminent, irreparable harm from that aspect of the Order. To the extent the Court is inclined to revisit its previous order at this stage, it

---

[1] Plaintiffs do not contest that the Stay Order has the effect of staying the Court's First TRO, which was actually appealed, and was actually the subject of the Stay Order. But that does not mean the panel's non-final decision is a "significant change in the law."

should, at most, stay the Second TRO in part, so that it is consistent with the Hegseth Memorandum mobilizing only 200 members of the Oregon National Guard.

## II. BACKGROUND

On October 4, 2025, this Court entered its First TRO, which enjoined Defendants from deploying the Oregon National Guard. ECF 56. Shortly thereafter, Defendants mobilized the California National Guard seeking to circumvent the First TRO. In response, California joined this lawsuit as a Plaintiff, and Plaintiffs moved for a Second TRO. ECF 59. The Court provided the parties with a hearing on October 5, accepted new evidence and argument, and entered its Second TRO. ECF 68.

The Court's Second TRO provides that, "[b]ased on this Court's prior Opinion and Order Granting Plaintiffs' First Motion for Temporary Restraining Order, ECF 56; the hearing on Plaintiffs' Second Motion for Temporary Restraining Order; and the newly submitted declarations, ECF 60, 63, 65, this Court GRANTS Plaintiffs' Second Motion for Temporary Restraining Order, ECF 59 . . . ." ECF 68. Among other relief, the Court's Second TRO "temporarily enjoined [Defendants] from deploying federalized members of the National Guard in Oregon." *Id.* Defendants appealed the Court's First TRO, but not the Second TRO.

On October 20, the Ninth Circuit issued a per curium Stay Order, with a concurrence by Judge Nelson, and a dissent by Judge Graber. *See* Order, *Oregon v. Trump*, No. 25-6268, ECF 61.1. The Stay Order grants Defendants' motion for stay pending appeal of the First TRO. Within hours of the issuance of the Stay Order, a judge *sua sponte* called for a vote of whether the Stay Order should be reheard en banc, and the parties were ordered to file supplemental briefs on an extremely expedited schedule, by 11:59 p.m. on October 22. *See* Order, *Oregon v. Trump*, No. 25-6268, ECF 63.1 ("En Banc Briefing Order"). Plaintiffs intend to file a brief in accordance with this order urging the Ninth Circuit to rehear the Stay Order en banc.

If the Ninth Circuit votes to rehear the case en banc, the Stay Order will be immediately vacated. 9th Cir. Gen. Order 5.5(d). For that reason, the Ninth Circuit's own rules stay the

issuance of an appellate mandate where, as here, a judge has issued a sua sponte en banc call. *Id.* at 5.1.b.8. As such, because there has been a request for an en banc vote, the panel decision remains non-final.

### III. STANDARD OF REVIEW

A defendant seeking dissolution of an injunction bears the burden of establishing that a "significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1169–70 (9th Cir. 2000); *see also Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013). This inquiry does not extend to the propriety of the original injunction, but rather only involves whether the defendant has carried its burden of demonstrating a significant change in facts or law. *Gon v. First State Ins. Co.*, 871 F.2d 863, 865 (9th Cir. 1989). If a defendant manages to carry its initial burden, the court must then address whether this change "warrants . . . dissolution of the injunction. This latter inquiry should be guided by the same criteria that govern the issuance of a preliminary injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (citations omitted).

### IV. ARGUMENT

Defendants fail to carry their burden of demonstrating a significant change in the facts or law and therefore the motion should be denied. To the extent the Court finds that Defendants have carried their burden, the Court should stay, in part, its Second TRO rather than dissolving it altogether; that is, stay the portions of the Second TRO that overlap with the First TRO.

**A.  Defendants fail to carry their burden to show that there has been a significant change in the law.**

Despite Defendants' assertions, there has been no "significant change in the law." ECF 97 at 4. Even if a stay pending appeal could be construed as something more than a suspension of the judicial proceeding on the First TRO, the panel decision is not yet final given the Ninth

Page 4 -   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER
　　　　　　　　　　　　　　　　　　Department of Justice
　　　　　　　　　　　　　　　　　　100 SW Market Street
　　　　　　　　　　　　　　　　　　Portland, OR 97201
　　　　　　　　　　　　　　　　　　9716731880 / Fax: 9716735000

Circuit's ongoing en banc procedures.[2] Fed. R. App. P. 41(b) ("The court's mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later."). Indeed, in a typical appeal, the appellate mandate *cannot* issue when there is a pending en banc vote request. 9th Cir. Gen. Order 5.1(b)(8) ("Whenever an off-panel judge timely invokes the procedures set forth in this Chapter, the mandate shall automatically be stayed."); *see also* 9th Cir. Gen. Order 5.4(c)(3) (expressly providing for sua sponte en banc calls). This includes "cases disposed of by an order of a motions panel . . . ." 9th Cir. R. 41-2. And with good reason: If the Ninth Circuit votes to hear the case en banc, it may disagree with the panel's reasoning and issue an entirely new decision or reasoning. As such, it would be legal error to construe the Stay Order as a "significant change in the law" when the motions panel decision remains uncertain.

As noted above, a Ninth Circuit judge already called for an en banc vote *sua sponte* within hours of the Stay Order being issued. En Banc Briefing Order at 1. The Court has ordered simultaneous supplemental briefing be filed tomorrow, October 22. *Id.*; *see* 9th Cir. Gen. Order 5.4(c)(3) (generally providing parties 21 days to file supplemental briefing in response to a *sua sponte* en banc call). Considering the expedited nature of these proceedings, it is extremely likely that an en banc vote will occur quickly. And if the Ninth Circuit votes for en banc review, the Stay Order will be immediately vacated. 9th Cir. Gen. Order 5.5(d); *see* 9th Cir. R. 40-3, comm. n.2 ("When the Court votes to rehear a matter en banc, the Chief Judge will enter an order so indicating. The vote tally is not communicated to the parties. The three-judge panel opinion is vacated, subject to reinstatement by the en banc Court."). There is also a "reasonable probability" that Ninth Circuit will vote to hear the case en banc considering: (1) Judge Graber's

---

[2] The Stay Order suggests that the two TRO orders "rise or fall together." ECF 61.1 at 34. But the panel cannot possibly be suggesting that it has some kind of pendant jurisdiction over an order that was never appealed. Putting aside the issue of irreparable harm (or lack thereof), any suggestion that the panel's can decide the "merits of the issues" with respect to an order that was never appealed is entirely without precedent.

Page 5 -   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR,
           ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY
           RESTRAINING ORDER
                                          Department of Justice
                                          100 SW Market Street
                                          Portland, OR 97201
                                      9716731880 / Fax: 9716735000

dissent; (2) the Stay Order's inter-circuit conflict with the Seventh Circuit's denial of the stay order with respect to the Illinois National Guard in *Illinois v. Trump*, -- F.4th --, 2025 WL 2937065 (7th Cir. Oct. 16, 2025); and (3) the Stay Order's intra-circuit conflict with the legal standard articulated by the Ninth Circuit in *Newsom v. Trump*, 141 F.4th 1032 (9th Cir. 2025). *See Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2616 (2020) (examining the "reasonable probability" of further appellate review on whether to disturb ordered injunctive relief). With these factors and an imminent pending vote amidst expedited en banc proceedings, it would be premature for this Court to grant Defendants' motion.

In their rush to move to dissolve the Second TRO, Defendants misconstrue the Stay Order as "binding Circuit precedent . . ." ECF 97 at 4. Not so. As an initial matter, as discussed above, the Stay Order will be automatically vacated should the Ninth Circuit vote to rehear the motion for a stay en banc, and those proceedings are both ongoing and expedited. 9th Cir. Gen. Order 5.5(d). More fundamentally, a majority of the Stay Order panel appears to think otherwise. Judge Graber recognized that the second TRO involves additional and difficult legal questions from those posed by the first TRO. ECF 61.1 at 88 (Graber, J., dissenting) ("The majority's order only grants a stay, which suspends the effect of the first TRO; it does not dissolve the first TRO or the reasoned decision on which it rests, and the stay certainly does not require dissolution of the second TRO."). And Judge Nelson separately stated that motions panel decisions lack binding precedential value, "even on pure issues of law." ECF 61.1 at 38 (Nelson, J., concurring).

This uncertain legal landscape is a quagmire of Defendants' own making, as discussed more fully below. Had Defendants appealed the Second TRO, those issues would have been before the Ninth Circuit. But Defendants made the tactical choice not to appeal the Second TRO. That choice, which avoided hard questions about whether this Court's First TRO was ignored, and whether Defendants violated core principles of federalism in ordering one state's National Guard to police another state's streets, carries consequences. Without an appeal of the Second

Page 6 -   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

TRO, Defendants must wait until the en banc process plays out before the Stay Order is truly final. At a minimum, the expedited and uncertain nature of the en banc proceedings, and the active part that Defendants played in engendering the legal uncertainty at hand, counsels against treating the Stay Order as a "significant change in the law." *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-cv-02847-AMO, 2025 WL 1168898, at *3 (N.D. Cal. Apr. 21, 2025) (finding that the Supreme Court's stay order did not warrant dissolution of a TRO), 135 F.4th 852 (9th Cir. 2025) (appeal dismissed and rehearing en banc denied). Accordingly, Defendants failed to carry their burden.

**B.    If the Court acts on the Motion to Dissolve without waiting for the en banc vote, at best the Court should stay in part the Second TRO, and not dissolve it.**

The procedural complexities around what to do with the Second TRO are exacerbated by Defendants' gamesmanship in this case:

At the outset, the Second TRO was the direct result of Defendants' actions in attempting to circumvent[3] the Court's First TRO by calling in hundreds of additional out-of-state troops.

Then, Defendants chose not to appeal the Second TRO. That had two consequences. First, and most obviously, the Ninth Circuit issued no order regarding the Second TRO. Second, Defendants' choice to not appeal insulated. Defendants' gamesmanship in deploying hundreds of additional troops without additional justification from the Ninth Circuit panel's review in this case.

Having conspicuously avoided appealing the Second TRO to the Ninth Circuit, Defendants now ask this Court to guess how the Ninth Circuit might have answered additional issues. Specifically, was the re-deployment of hundreds of *additional* out-of-state troops from California consistent with the original justification for federalizing those troops? And did the

---

[3] See Second TRO Hr'g Tr. 19:14–20 ("THE COURT: . . . [O]riginally, I was viewing this just as a TRO to enjoin defendants from deploying members of the California National Guard to Oregon, but it seems to me that, based on the conduct of the defendants and the now seeking National Guard from Texas to go to Oregon – again, I see those as direct contravention of this - - the order that this Court issued yesterday . . . .").

Page 7 -   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER
                                                    Department of Justice
                                                    100 SW Market Street
                                                    Portland, OR 97201
                                                    9716731880 / Fax: 9716735000

federalization and move to deploy *still more* troops from Texas "reflect[] a colorable assessment of the facts and law within a 'range of honest judgment?'" Stay Order at 31 (citing *Newsom*, 141 F.4th at 10512025). The Stay Order does not answer these difficult questions, because Defendants' appeal of only the first TRO did not raise them.

This Court should not reward that gamesmanship by granting Defendants' motion. In any case, to the extent the Court deems any modification to the Second TRO appropriate, between now and the evidentiary trial in a week and a half, that modification should be strictly limited. In particular, the Second TRO should be stayed only in part to match precisely what the Ninth Circuit Stay Decision allowed, and nothing more: that is, between now and the decision at next week's trial (or further orders from the Ninth Circuit), deployment of 200 federalized Oregon National Guard troops only, with no additional troops from any other state.

This limited modification is the most that should be allowed, for the five reasons set forth below.

    **1.    Neither Defendants nor the Ninth Circuit have established or even suggested that *more* than 200 National Guard troops are plausibly "necessary" in Portland within the meaning of 10 U.S.C. § 12406.**

Title 10 only allows federalization of troops "in such numbers" that the President "considers necessary to repel the invasion, suppress the rebellion, or execute those laws." 10 U.S.C. § 12406. The only number that was ever presented as "necessary" by the federal government in advance of the First TRO—and the only one the Ninth Circuit considered—was 200 Oregon National Guard Troops. *See* Compl. Ex. 2, ECF 1-2 (Sept. 28, 2025) (Secretary Hegseth Memorandum federalizing 200 members of Oregon National Guard); *see also* Compl. Ex. 1, ECF 1-1 (Sept. 27, 2025) (Rieger Memorandum requesting the Governor activate 200 servicemembers), Rieger Decl., Ex. A, ECF 37 at 12 (Sept. 26, 2025) (DHS request for "200 DoW personnel").

In the Stay Order, the majority found that, on their reading of the facts of the First TRO record, the President's federalization of 200 Oregon National Guard Members was likely lawful

Page 8 -    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

The Concurrence emphasized that "the likely lawfulness of the President's determination under § 12406 is bolstered by the executive's proportionate response to the events in Portland." Opinion at 37 (Nelson, J., concurring). Judge Nelson went on to explain:

> The federalization and deployment of just 200 National Guardsmen for 60 days is well within a deferential proportional response to support good faith. . . . The limited nature of the federalization—for just 60 days—bolsters that conclusion. Given the proportionate response, the President likely invoked § 12406 lawfully.

*Id*. at 57.[4]

Defendants' Motion to Dissolve makes no attempt to show that more than the original 200 troops are necessary in Portland today. Nor do they demonstrate that the Stay Order somehow removes the requirement that Defendants may only deploy the "number necessary," or that some changed factual circumstances on the ground requires more numbers now than they originally determined. This was Defendants' burden to carry, and their showing is plainly inadequate.

### 2. The Ninth Circuit did not address the question of whether Defendants adding additional troops to the 200 was within the range of good faith honest judgment.

The Stay Order expressly recognizes that the Second TRO, which "preclude[s] the deployment of members of the California National Guard[,] is a separate issue." Stay Order at 34. While the Stay Order elsewhere observes in dicta that "the first TRO and the second TRO rise or fall together on the merits of the issues *raised in this motion* for a stay pending appeal," Stay Order, at 34 (emphasis added), there is no question that *this* issue was not before the Ninth Circuit. The lawfulness of deploying out-of-state National Guard members (or any deployment beyond the original 200) was not considered by the panel.[5]

---

[4] Plaintiffs, of course, do not agree that any deployment is lawful or warranted, and expect to demonstrate at trial, after the opportunity for a full evidentiary showing, that the panel's reading of the facts outlined in Defendants' vague and general TRO declarations does not hold up to scrutiny.

[5] *See also* Stay Order, at 88 (Graber J., dissenting) ("Nothing in the majority's order does—or could—require the district court to dissolve the second TRO, which is not before us.")

Page 9 -  PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Unlike the First TRO, which enjoined only the operation of the Hegseth Memorandum and its federalization of the 200 troops that the Hegseth Memorandum deemed necessary, the Second TRO effectively reiterated that prohibition, but also went beyond it, and enjoined deployment of hundreds of additional National Guard troops from other states. This was necessary because, as discussed above, immediately after the First TRO enjoined the federalization of 200 Oregon National Guard members, Defendants announced their intent to send *300* California National Guard (Eck Decl., ECF 60 (¶ 18) plus up to *400* Texas National Guard to Portland and Chicago (Hegseth Tex. Mem., ECF 65-1 at 4).

Defendants made no showing at the First TRO hearing that any more than the original 200 troops were necessary in Portland.[6] Nor did they make any such showing at the Second TRO hearing.[7] Defendants declined to appeal this Court's Second TRO—and thus we do not know how the Ninth Circuit would have viewed this issue they had the full suite of facts and Defendants' less than restrained conduct after the First TRO to consider. Rather than guess, this Court should go no further than the Stay Order, if it is inclined to grant the motion at all.

---

[6] Indeed, in briefing and argument on the First TRO, Defendants emphasized, over and over, that they only sought to federalize 200 Oregon guard members and that the Guard's mission would be narrowly limited to protecting federal personnel and property. First TRO Hr'g Tr. 15:5–6 ("Here only about 200 guardsmen have been federalized"), *id.* at 55:11–12 ("their mission is going to be one of providing federal protection"); *see also* Defs.' Opp'n to Pls.' Mot. for TRO ("Opp'n"), ECF 35 at 29 ("*Only* 200 members of the National Guard will be called into federal service" (emphasis added).). Defendants made the same representations in their arguments to the Ninth Circuit. *See Oregon v. Trump*, No. 25-6268, Oct. 9, 2025 Tr. 7:15 (arguing that deployment in Oregon was "calibrated" because "[o]nly 200 members of the Oregon National Guard were called up compared to the 4,000 that were called up in [Los Angeles]."). In their briefing in response to Plaintiffs' arguments around the Posse Comitatus Act (PCA), Defendants further argued that the PCA was not implicated, representing to the Court that "the Presidential and Secretarial Orders do not authorize the Guard to execute the laws—only to protect federal personnel and property . . . ." Opp'n at 9. Defendants also reassured this Court that "the June 7 Presidential Memorandum and September 28 DoD Memorandum both make clear, the Guard's functions are limited to protecting ICE agents and other governmental personnel, as well as federal property." Opp'n at 31 (citing Rieger Decl., ECF 37, Hegseth Mem. and Trump Mem. Exs. C–D). And "the Guard has not been authorized to execute the laws for PCA purposes." Opp'n at 30.

[7] See Second TRO Hr'g Tr. 19:8–9 ("THE COURT... "No new information has been provided about any issues in Portland").

Page 10 -  PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

### 3. The cross-state deployment would irreparably injure Oregon's status as an equal sovereign—an injury the Ninth Circuit panel did not consider.

Moreover, the Stay Order expressly declined to address the distinct irreparable harms that arise when one State's National Guard troops are ordered to another State. *See Oregon v. Trump*, No. 25-6268 (9th Cir. Oct. 20, 2025) ECF 61.1 at 34 ("Whether the second TRO could be extended to preclude the deployment of members of the California National Guard is a separate issue."). Deploying federalized National Guard troops from California, Texas, or any other State into Oregon erodes the "fundamental principle of equal sovereignty among the States" and harms Oregon's ability to remain "equal in power, dignity, and authority" with its fellow States. *Shelby Cnty. v. Holder*, 570 U.S. 529, 544 (2013) (internal quotations omitted). This principle has endured since the Founding Era, when Alexander Hamilton characterized the prospect of the federal government sending one State's militia into the territories of another as an "absurd[ity]" and remarked that such overreach would invite "detestation" and "universal hatred." The Federalist No. 29 (Alexander Hamilton). And the Seventh Circuit reinforced this principle in its recent order, when it held that "the deployment of National Guard members from Texas" to Illinois was "an incursion on Illinois's sovereignty" that "makes the constitutional injury especially significant." *Illinois v. Trump*, No. 25-2798 (7th Cir. Oct. 16, 2025) ECF 26 at 17.

By deciding not to appeal the Second TRO, Defendants chose not to put the issue of their attempted cross-state deployments before the Ninth Circuit. As a result of Defendants choice, the Stay Order did not decide that issue. And the only basis Defendants provide in their threadbare motion is the incorrect assertion of a change in the law. Considering the stakes of interstate troop transfers and the evidentiary record before the Court, Defendants have failed to carry their burden, and the Court should deny the motion, or at the very least limit its actions to staying the Second TRO in part.

### 4. The equitable factors do not support dissolution of the TRO.

In assessing whether to dissolve or stay the Second TRO, assuming Defendants have carried their threshold burden to show there has been a significant change in fact or law, the Court must also assess the equitable factors. *Karnoski*, 926 F.3d at 1198.

The Stay Order determined that, based on the record from the TRO proceeding, the equitable factors pertaining to the purported need for 200 Oregon National Guard Troops likely favor Defendants. But that determination is not dispositive here for three reasons.

First, as demonstrated above, there is a reasonable probability that the Ninth Circuit will vote to hear the case en banc and the Stay Order will be vacated.

Second, even if the Stay Order remains in place, the Stay Order has made no findings as to how the equities should be resolved where Defendants propose to deploy hundreds more out-of-state National Guard troops in addition to the 200 troops the Ninth Circuit considered. And this Court already performed that evaluation. The equitable factors favor Plaintiffs. For the reasons set forth above, Defendants are not likely to succeed on an argument—which they have never presented here or in the Ninth Circuit—that more than 200 troops are "necessary" within the meaning of 10 U.S.C. § 12406. In addition, on this record, Defendants cannot show that they will suffer irreparable harm—or indeed any harm—from having exactly the number of National Guard troops that they federalized for use in Portland in the first place. By contrast, Plaintiffs and the public interest will suffer both from the unlawful deployment of greater than the "number necessary" and the additional incursion on the States' sovereignty from cross-state deployments. *See* Federalist No. 29, *supra*.

Third, the equities favor waiting to take any action on this motion until there is an en banc vote, the proceedings for which are moving on an expedited timeframe. Because Defendants have created a complex procedural posture here by rushing their Motion to Dissolve and not appealing the Second TRO at all, they have created a situation where a rushed decision from this Court on the Motion to Dissolve risks creating even more uncertainty. As discussed, the Stay Order will be vacated immediately if the Ninth Circuit votes in the coming days to

Page 12 -  PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

rehear the stay motion en banc. As such a decision might be subject to change if the en banc vote occurs in the coming days and vacates the Stay Order. Such judicial whiplash would come with the associated potential for deployment/subsequent order to withdraw troops that is expensive and logistically difficult. Judicial economy counsels in favor of a short pause to see where the Ninth Circuit process ends up before ruling on Defendants' motion. *Cf. Oregon v. Trump*, No. 25-6268, ECF 32.1 at 3 ("[G]ranting an administrative stay will best preserve the status quo."). And Defendants would not be without recourse in the interim—if Defendants feel they must have a decision more quickly, they remain free to notice an appeal on the Second TRO and move for a stay in the Ninth Circuit, assuming that the Ninth Circuit has not already voted to rehear the Stay Order en banc.

### 5. The Ninth Circuit's Order does not address California's distinct harms or the cross-border deployment of their National Guard.

Finally, this Court should keep the Second TRO in place as to California's National Guard troops, for the following additional reasons. Whereas the First TRO only relied upon a finding of Oregon's irreparable harm, the Second TRO was also predicated on this Court's determination that California will suffer irreparable harm if its National Guard troops are deployed in Oregon. *See* Second TRO Hr'g. Tr. 23:12–16 ("And I accept also the irreparable harm that the State of California has expressed at this hearing, and I adopt that as a rationale as well to find irreparable harm with regard to California providing National Guard to Oregon under the circumstances of this case.").

Because Defendants chose not to appeal the Second TRO, California's distinct irreparable harms were not before the Ninth Circuit. Thus, the *per curiam* order does not disturb this Court's findings in issuing the Second TRO that California will suffer irreparable injuries to its sovereign rights and ability to respond to emergencies if its National Guard troops are deployed in Oregon. *See* Mot. for a Second TRO, ECF 59 at 11–12. Moreover, recent events establish that California will suffer this harm for a prolonged period if the Second TRO is stayed or dissolved as to its Guard—with the deployment of California's troops in Oregon and the

resulting deprivation of State resources in California. Prior to Defendants' deployment of the military to Oregon, the federalization of California's National Guard was set to expire on November 5, 2025. Eck Decl., ECF 60 ¶ 16. However, on October 16, 2025, the Department of War "directed the extension of orders for all California National Guard units called into Federal service . . . to February 2, 2026," in response to the Department of Homeland Security's request for assistance in Oregon. Marshall Decl. (Oct. 21, 2025), Attach. 1 (Memorandum from Col. Anthony C. Fuscellaro to Executive Secretary, U.S. Department of Homeland Security (Oct. 16, 2025)). Defendants have conceded the situation in Los Angeles has improved and that they had planned to send all of California's Guard to Oregon—confirming that they have no valid basis for continued federalization in Los Angeles. Thus, the practical effect of allowing the deployment California's of National Guard troops in Oregon is to maintain those California troops under federal control for an additional three months. This result would not only worsen the irreparable damage to California's and Oregon's sovereign interests but would also deprive California of members of its Guard it could otherwise use to carry out State functions.

Even if this Court otherwise stays or dissolves the Second TRO, it should continue to temporarily enjoin Defendants from deploying members of the California National Guard in Oregon. At an absolute minimum, the Court should stay any order dissolving or vacating the second TRO as to the California National Guard troops for a period of seven days, to give California an opportunity to seek relief from other courts.

## V. CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dissolve, and the Court and parties should wait for the outcome of the forthcoming en banc vote to determine how to proceed. In the alternative, to the extent the Court determines that Defendants have carried their burden at this stage, and that it must act before the en banc vote, the Court should go only as far as the Ninth Circuit panel did, and not farther.

Page 14 -   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

Respectfully submitted,

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Solicitor General
DUSTIN BUEHLER
Special Counsel

*s/ Brian Simmonds Marshall*
SCOTT KENNEDY #T25070201, D.C. Bar #1658085
BRIAN SIMMONDS MARSHALL #196129
THOMAS CASTELLI #226448
IAN VAN LOH #225163
RACHEL SOWRAY #095159
LEANNE HARTMANN #T25070201, Mass. BBO #667852
Senior Assistant Attorneys General
ALEXANDER C. JONES #213898
DEREK OLSON #225504
Assistant Attorneys General
100 SW Market Street
Portland, OR 97201
971-673-1880
Scott.Kennedy@doj.oregon.gov
Brian.S.Marshall@doj.oregon.gov
Thomas.Castelli@doj.oregon.gov
Ian.VanLoh@doj.oregon.gov
Rachel.Sowray@doj.oregon.gov
Leanne.Hartmann@doj.oregon.gov
Alex.Jones@doj.oregon.gov
Derek.Olson@doj.oregon.gov

*Counsel for the State of Oregon*

Page 15 -   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

        ROBERT TAYLOR #044287
        Portland City Attorney

        *s/ Caroline Turco*
        CAROLINE TURCO #083813
        Senior Deputy City Attorney
        NAOMI SHEFFIELD #170601
        Chief Deputy City Attorney
        1221 SW Fourth Avenue
        Fourth Floor, Room 430
        Portland, OR 97204
        Tel: (503) 823-4047
        Fax: (503) 823-3089
        Caroline.Turco@portlandoregon.gov
        Naomi.Sheffield@portlandoregon.gov

        *Counsel for the City of Portland*

        **ROB BONTA**
        Attorney General of California

        *s/ Jane Reilley*
        Michael L. Newman
        Thomas S. Patterson
        Senior Assistant Attorneys General
        Anya M. Binsacca
        Marissa Malouff
        James E. Stanley
        Supervising Deputy Attorneys General
        Jesse Basbaum
        Barbara Horne-Petersdorf
        Jane Reilley
        Meghan H. Strong
        Deputy Attorneys General
        455 Golden Gate Ave.
        San Francisco, CA 94102
        Telephone: (415) 510-3879
        E-mail: Jane.Reilley@doj.ca.gov

        *Counsel for the State of California*

Page 16 -   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISSOLVE, OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER

        Department of Justice
        100 SW Market Street
        Portland, OR 97201
        9716731880 / Fax: 9716735000