BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON (NE Bar No. 25886)
Deputy Assistant Attorney General
JEAN LIN (NY Bar No. 4074530)
Special Litigation Counsel
TIBERIUS DAVIS
JOHN BAILEY
Counsel to the Assistant Attorney General
MICHAEL J. GERARDI (DC Bar No. 1017949)
Senior Trial Counsel
CHRISTOPHER D. EDELMAN (DC Bar No. 1033486)
Senior Counsel
JODY D. LOWENSTEIN (MT Bar No. 55816869)
BENJAMIN S. KURLAND (DC Bar No. 1617521)
KATHLEEN C. JACOBS (TX Bar No. 24091154)
J. STEPHEN TAGERT (VA Bar No. 99641)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| STATE OF OREGON and the CITY OF PORTLAND,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*, in their official capacities,<br><br>*Defendants.* | Case No. 3:25-cv-01756-SI<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISSOLVE OR, ALTERNATIVELY, TO STAY THIS COURT'S OCTOBER 5, 2025 TEMPORARY RESTRAINING ORDER** |

This Court should enter an order today dissolving or staying its October 5, 2025 Order. In staying the October 4, 2025 Order (First TRO), the Ninth Circuit expressly held that its conclusions as to the First TRO applied to the October 5, 2025 Order (Second TRO): "Defendants are thus correct that the first TRO and the second TRO rise or fall together on the merits of the issues raised in this motion for a stay pending appeal." *Oregon et al. v. Trump et al.*, No. 25-6268, --- F.4th ----, 2025 WL 2951371, at *14 (9th Cir. Oct. 20, 2025 (per curiam)).

Plaintiffs invite the Court to ignore the Ninth Circuit by calling this analysis "dicta." *Contra* Opp. at 9. It is not. This analysis was indispensable to the panel majority's conclusion that a stay should be issued as to the First TRO. The dissent argued that Defendants could not establish irreparable harm because the Second TRO would continue to restrain the deployment. But the majority necessarily rejected that argument. Indeed, the panel could not have been clearer that it expected its stay order would require dissolution or a stay of the Second TRO: "The dissent, however, argues that Defendants face no irreparable harm because the second TRO, which is not before us, still prevents Defendants from deploying the National Guard. . . . But this argument lacks merit." *Id.* That conclusion requires dissolution or stay of the Second TRO.

The Ninth Circuit's conclusion that the two TROs rise or fall together is also obviously correct. The Second TRO relied on the First TRO for its reasoning. The Court did not issue a new opinion. Instead, it explained that the opinion accompanying the first TRO applied to the second TRO too. Oct. 5, 2025 Hearing Tr. 23:18-20 ("Because of the emergency basis, it is not my plan to issue an opinion because I'm relying on all of the reasoning previously expressed in my opinion."). Nor did the Court make any new findings or provide any new analysis on the likelihood of success on the merits.[1] When the Court announced its decision in the October 5, 2025 hearing, it explained: "No

---

[1] Plaintiffs argue that the Second TRO relied upon additional factual findings as to irreparable

Defendants' Reply in Support of Motion to Dissolve or, Alternatively, to Stay This Court's
October 5, 2025 Temporary Restraining Order
1

new information has been provided about any issues in Portland; so for all of the reasons stated in my prior opinion or this Court's prior opinion and order granting plaintiffs' first motion for a TRO, I grant plaintiffs' second motion for a TRO." Oct. 5, 2025 Hearing Tr. 19:8-12; *see also id.* 22:22-23:5 ("I am basing that on all of the reasons that were in my prior opinion and order granting plaintiffs' first motion for a TRO, and I—the same reasoning applies . . . I have demonstrated that it is not appropriate to bring military in to Oregon at the federalized military at this time.").

In response, Plaintiffs simply repeat—literally over and over again—that Defendants did not appeal the Second TRO, which they bizarrely characterize as "gamesmanship." But the panel majority noted this point and agreed with Defendants that they did not *need to* appeal the Second TRO precisely because the panel's analysis of the First TRO applied with full force to the Second TRO. *Compare Oregon v. Trump*, 2025 WL 2951371, at *8 n.8 ("At oral argument, Defendants' counsel explained that they did not appeal the second TRO, which relies on the same legal reasoning as the first TRO, because they concluded that the district court would be required to dissolve the second TRO if Defendants succeed on their motion for a stay pending appeal."), *with id.* at *14 ("Defendants are thus correct that the first TRO and the second TRO rise or fall together on the merits of the issues raised in this motion for a stay pending appeal."). Indeed, even the dissent acknowledged the majority's expectation that

---

harm for California that go beyond the factual findings underlying the First TRO. Opp. at 13. That assertion says nothing about the Court's likelihood of success on the merits analysis for the Second TRO, which was identical to the first TRO. And Plaintiffs do not appear to suggest that the Second TRO should survive on irreparable harm alone and in the absence of a likelihood of success on the merits. Even if that were a possibility, Plaintiffs fail to reconcile their assertions of irreparable harm to California and a cross-border deployment with the stay opinion's reasoning. The majority recognized that "Plaintiffs also argue that the 'irreparable harm' factor weighs in their favor because the federalization of the National Guard, over the Governor's objections, will cause a 'substantial sovereign injury'" and "result in the diversion of Oregon National Guard members from their state responsibilities" among other things. *Oregon*, 2025 WL 2951371, at *14. The Ninth Circuit rejected those arguments. "As we stated in *Newsom*, while Plaintiffs have significant interests, their arguments are, 'in essence, a merits argument that we have already resolved.'" *Id.* "Plaintiffs' arguments on the remaining stay factors rise and fall with their argument on the merits." *Id.*

this Court would immediately dissolve the Second TRO. *See id.* at \*33 (Graber, J., dissenting).

Plaintiffs also suggest the analysis supporting the Ninth Circuit's stay order can be ignored because one of the Ninth Circuit's 29 active judges has called for a vote on whether the stay order should be reheard en banc. Based on this development, plaintiffs repeatedly say the Ninth Circuit's stay order is "non-final." Speculation that the order might be vacated by a higher authority does not obviate a lower court's obligation to comply with that order as long as it remains in effect. Just as the prospect of appeal did not deprive this Court's TRO of immediate effect and would not have excused non-compliance, the prospect of en banc review does not deprive the Ninth Circuit's order of immediate effect or excuse continued adherence to a rationale that has been rejected by a higher authority. By plaintiffs' measure, this Court's two TROs and any other district court orders are "non-final" until certiorari is denied. But, quite properly, neither they nor this Court would tolerate a refusal to abide by the TROs on that basis. And the question of whether the Ninth Circuit's order will be vacated rests on pure speculation.[2]

In any event, if the Ninth Circuit *does* vote to rehear the stay order and the stay order is immediately vacated (as Plaintiffs suggest would be the effect of such a vote[3]), the First TRO would spring back into place. And this Court could decide whether to extend that TRO to prohibit the deployment of out of state federalized Guardsmen, as it did in short order when it issued the Second

---

[2] A judge also sua sponte called for a vote on rehearing en banc following the Ninth Circuit's decision to stay Judge Breyer's first injunction as to the Los Angeles area federalization and deployment in *Newsom v. Trump*, 141 F.4th 1032, 1040 (9th Cir. 2025) (per curiam). *See* No. 25-3727, ECF No. 43.1. That occurred on July 11 and, following supplemental briefing, no action has been taken to disturb the panel's stay in that case.

[3] Even if the Ninth Circuit votes to rehear the stay decision en banc, that would not necessarily vacate the stay itself, *see, e.g.*, *California v. Azar*, 928 F.3d 1153, 1155 (9th Cir. 2019) (mem.), and even if vacated at the very least the en banc court once constituted could vote to reinstate the stay pending its consideration of the appeal en banc, *see* Ninth Circuit General Order 5.5(d) ("The three-judge panel opinion shall remain vacated, *subject to reinstatement by the en banc court*." (emphasis added)).

TRO. But that possibility is not a basis to maintain the Second TRO notwithstanding the clear contrary holding of the panel majority.

Finally, Plaintiffs' various arguments that the stay order is not a significant change in law requiring dissolution of the Second TRO cannot be taken seriously. As an initial matter, the stay decision is binding here; regardless, it obviously at least heavily informs how this Court should resolve the motion to dissolve. Even holdings that the Government is "likely" to succeed on the merits must "inform how a [lower] court" proceeds "in like cases," *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025)—let alone in the *same case*. And even if the Court were persuaded that a higher court's rejection of the analysis that this Court relied on in issuing the second TRO were not a significant change in the law, that would not be a reason to decline to stay the second TRO. Motions to stay are governed by the four-factor *Nken* test that the Ninth Circuit applied in fully staying the first TRO. *See Oregon*, 2025 WL 2951371, at *8. And that order controls how this Court must approach a stay of the second TRO.

Plaintiffs also suggest that the absence of a mandate from the Ninth Circuit is a reason for this Court to stay its hand. But that ignores that the stay order is self-executing as to the order stayed, a fact that even Plaintiffs admit in a footnote: "Plaintiffs do not contest that the Stay Order has the effect of staying the Court's First TRO . . ." Opp. at 2 n.1. Appellate courts do not issue mandates with stays. The only question is whether that order requires dissolution of a TRO issued the next day, resting on identical reasoning, and that the Court *described* as rising and falling with the First TRO in the course of *rejecting* the argument that staying the First TRO would not provide the federal government with relief. Of course, it does.

Plaintiffs' contention that the stay order, even though published, is not binding Circuit precedent is irrelevant even if true. Whether and under what circumstances a published stay order binds *subsequent Ninth Circuit* panels may be an unsettled question. Judge Nelson, for example, questioned whether he was bound by the panel's conclusion in *Newsom*—a different case—that the

President's determinations under Section 12406 were reviewable. *Oregon v. Trump*, 2025 WL 2951371, at *15 (Nelson, J., concurring). But: (1) a district court is certainly bound by a published court of appeals decision even if under some circumstances another court of appeals panel would not be; (2) a district court is certainly bound by a court of appeals decision issued in *the same case*; and (3) a district court is even more certainly bound by a court of appeals decision issued in the same case, as to an order the court of appeals *addresses* in that opinion.

Finally, Plaintiffs also argue at length in the alternative that the Second TRO should not be dissolved in full but at most only modified to allow the federalization and deployment of only the 200 Guardsmen covered by the First TRO. To be sure, the panel majority stated that "[w]hether the second TRO could be extended to preclude the deployment of members of the California National Guard is a separate issue," 2025 WL 2951371, at *14. But the Second TRO did not treat it as a separate issue. As the panel also noted and as explained above, the Second TRO did not contain any additional reasoning independent of the First TRO, and was expressly based on that TRO, which the Court stayed.

At most, then, this Court could consider a new TRO premised on that "separate issue." But there is no valid reason to treat out-of-state Guardsmen differently from in-state Guardsmen. Once federalized, Guardsmen are fully federal officers, no different from other federal officers moving across state lines. Section 12406 even recognizes the President's authority to federalize Guardsmen from other States. He "may call into Federal service members and units of the National Guard of *any* State." 10 U.S.C. § 12406 (emphasis added). And during both the current administration and Biden Administration, federalized Guard have worked in States other than their own. *See* Antoinette Grajeda, "Arkansas National Guardsmen mobilized to southern border," Arkansas Advocate (Oct. 6, 2025), https://perma.cc/KZS5-DG7X; Alaska National Guard, "Alaska Army National Guardsmen to deploy to Southwest border to support Customs and Border Protection," (Oct. 3, 2024),

https://perma.cc/BQ6W-WKHV. In addition, even if the President's judgment that conditions are present to trigger Section 12406 is subject to some level of judicial review, the number of Guardsmen to federalize plainly is not. The statute authorizes the President to federalize Guardsmen "in such numbers as he considers necessary." 10 U.S.C. § 12406. In any event, even if this Court distinguishes the federalized Guardsmen from Oregon from those coming from California and Texas, there is no question that the Second TRO must be dissolved or stayed insofar as it prohibits deployment of federalized Oregon Guardsmen.

Defendants recognize that the Court has now scheduled an October 24 telephonic conference to address this motion. Defendants nonetheless respectfully ask that the Court rule on this motion today because of the urgency of this matter and because Defendants' entitlement to the relief requested is clear. At the very least, Defendants submit that the Court should immediately enter an order stating that the Second TRO is dissolved (or stayed) insofar as it prohibits Defendants from deploying the 200 federalized Oregon Guardsmen that are encompassed by the First TRO that the Ninth Circuit stayed.

Dated:   October 22, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

JEAN LIN
Special Litigation Counsel

TIBERIUS DAVIS
JOHN BAILEY
Counsel to the Assistant Attorney General

Defendants' Reply in Support of Motion to Dissolve or, Alternatively, to Stay This Court's
October 5, 2025 Temporary Restraining Order

/s/ *Jody D. Lowenstein*
MICHAEL J. GERARDI
(DC Bar No. 1017949)
Senior Trial Counsel
CHRISTOPHER D. EDELMAN
(DC Bar No. 1033486)
Senior Counsel
JODY D. LOWENSTEIN
(MT Bar No. 55816869)
BENJAMIN S. KURLAND
(DC Bar No. 1617521)
KATHLEEN C. JACOBS
(TX Bar No. 24091154)
J. STEPHEN TAGERT
(VA Bar No. 99641)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel.: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*