Shelby Leighton*
Mariam Elbakr*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036

Leila Nasrolahi*
PUBLIC JUSTICE
475 14th St., Suite 610
Oakland, CA 94612

Athul Acharya, OSB #152436
Sara Rosenburg*
PUBLIC ACCOUNTABILITY
P.O. Box 14672
Portland, OR 97211

*Counsel for All Media Intervenors*

Jon Bial, OSB #002048
Katia Alcantar, OSB #201714
OREGON PUBLIC BROADCASTING
7140 S Macadam Avenue
Portland, OR 97219

*Counsel for Oregon Public Broadcasting*

*pro hac vice application forthcoming*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

|  |  |
|---|---|
| STATE OF OREGON, *et al.*<br><br>    *Plaintiffs*,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States, *et al.*<br><br>    *Defendants*. | Case No. 3:25-cv-01756-IM<br><br>**PROPOSED MEDIA INTERVENORS' MOTION TO UNSEAL COURT RECORDS AND DISCLOSE WITNESS IDENTITIES**<br><br>Request for Oral Argument |

# TABLE OF CONTENTS

Page(s)

LR-7-1 CERTIFICATION..................................................................................................1

MOTION...........................................................................................................................1

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO UNSEAL ......................1

I.      RELEVANT PROCEDURAL HISTORY ........................................................3

II.     ARGUMENT ....................................................................................................5

     A.     The Court should unseal the trial exhibits because there are no compelling reasons for secrecy that outweigh the public's right of access. ..............................7

          1.     *The applicable legal standard is the stringent "compelling reasons" standard.* ......................................................................................7

          2.     *Defendants have not provided articulable facts demonstrating that there are compelling reasons to seal the trial exhibits.* .................................8

          3.     *Defendants' asserted reasons for secrecy do not outweigh the public's interest in access.* ................................................................10

     B.     The Court Must Allow Media Intervenors A Meaningful Opportunity to Challenge the Sealing of Documents For Which There Is No Motion to Seal.......12

     C.     The Court Should Correct the Trial Transcript to Include the Full Names of the Witnesses Who Testified Using Initials.................................................................13

          1.     *Defendants have not established that R.C. and W.T. have a reasonable fear and are vulnerable to experiencing harm if their identities are disclosed.* ...................................................................................14

          2.     *Defendants' asserted reasons for secrecy do not outweigh the public's strong presumption of access.* ......................................................16

III.     CONCLUSION...............................................................................................16

CERTIFICATE OF COMPLIANCE ............................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU of Oregon. v. City of Eugene*,
    380 P.3d 281 (Or. 2016) ............................................................................12

*Associated Press v. U.S. Dist. Ct. for Cent. Dist. of California*,
    705 F.2d 1143 (9th Cir. 1983) ....................................................................5

*In re Copley Press, Inc.*,
    518 F.3d 1022 (9th Cir. 2008) ....................................................................7

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
    809 F.3d 1092 (9th Cir. 2016) ...............................................................5, 10

*Dickinson v. Trump*,
    No. 3:25-CV-2170-SI, 2026 WL 279917 (D. Or. Feb. 3, 2026) ............................11

*Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1067 (9th Cir. 2000)..........6, 13, 14

*Forbes Media LLC v. United States*,
    61 F.4th 1072 (9th Cir. 2023) ....................................................................7

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991)...............................................................................11

*Gonzalez v. US Hum. Rts. Network*,
    No. CV-20-00757-PHX-DWL, 2021 WL 4458237 (D. Ariz. Sept. 29, 2021)......................13

*Hernandez v. Cnty. of Monterey*,
    No. 13-CV-02354-BLF, 2023 WL 5418753 (N.D. Cal. Aug. 21, 2023)...............................11

*Int'l News Serv. v. Associated Press*,
    248 U.S. 215 (1918)................................................................................16

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ............................................................ *passim*

*La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*,
    2008 WL 11411715, No. 8:07-cv-250-DOC-AN (C.D. Cal. Feb. 28, 2008) .........................14

*Lawman v. City & Cnty. of San Francisco*,
    No. 15-cv-01202 (N.D. Cal. Feb. 5, 2016) ..................................................9

*California ex. rel. Lockyer v. Safeway, Inc.*,
    355 F. Supp. 2d 1111 (C.D. Cal. 2005) .................................................9, 10

*M-J-M-A- v. Hermosillo,*
No. 6:25-CV-02011-MTK, 2026 WL 562063 (D. Or. Feb. 27, 2026) ....................................11

*Microsoft Corp. v. Motorola, Inc.,*
No. C10-1823JLR, 2013 WL 12320923 (W.D. Wash. Apr. 19, 2013) ....................................8

*Mitchell v. Cate,*
No. 2:11-CV-1240 JAM AC, 2014 WL 1671589 (E.D. Cal. Apr. 28, 2014) ........................15

*Motley v. City of Fresno, California,*
No. 1:15-CV-00905-DAD-BAM, 2016 WL 1060144 (E.D. Cal. Mar. 17, 2016) ....................................................................................................................................9

*Nixon v. Warner Commc'ns, Inc.,*
435 U.S. 589 (1978) .........................................................................................................5

*O'Bannon v. Nat'l Collegiate Athletic Ass'n,*
No. C 09-3329 CW, 2014 WL 12997312 (N.D. Cal. June 10, 2014) .................................8

*Oliner v. Kontrabecki,*
745 F.3d 1024 (9th Cir. 2014) .........................................................................................6

*Oregon v. Trump,*
802 F. Supp. 3d 1277 (D. Or. 2025) ........................................................................1, 2, 11

*Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Arizona,*
156 F.3d 940 (9th Cir. 1998) .................................................................................9, 13, 14

*Quair v. Bega,*
232 F.R.D. 638 (E.D. Cal. 2005) ..........................................................................6, 9, 14

*Richmond Newspapers, Inc. v. Virginia,*
448 U.S. 555 (1980) .........................................................................................................5

*Unknown Parties v. Johnson,*
No. CV-15-00250-TUC-DCB, 2016 WL 8199309 (D. Ariz. June 27, 2016) ....................10

**Statutes**

ORS 192.311 *et seq.*.........................................................................................................16

**Other Authorities**

Alex Baumhardt, *Federal Judge Restricts Agents' Use of Tear Gas, Munitions Against Crowds at Portland ICE Facility*, Oregon Capital Chronicle (Feb. 3, 2026, 3:51PM) https://oregoncapitalchronicle.com/2026/02/03/federal-judge-restricts-agents-use-of-tear-gas-munitions-against-crowds-at-portland-ice-facility/ [https://perma.cc/ZGZ8-GRKP] ............................................................12

Alex Baumhardt, *Lawyers Scrutinize Federal Law Enforcement Numbers on Second Day of Oregon National Guard Trial*, Oregon Capital Chronicle (Oct. 30, 2025, 6:11 PM), https://oregoncapitalchronicle.com/2025/10/30/lawyers-scrutinize-federal-law-enforcement-numbers-on-second-day-of-oregon-national-guard-trial/ [https://perma.cc/BN88-R2B8] ................................................15

Andrew Schwartz, *Regional Federal Security Chiefs Were Not Consulted Before Portland Troop Call-Up*, Willamette Week (Oct. 30, 2025, 7:51 PM PDT) https://www.wweek.com/news/2025/10/30/regional-federal-security-chiefs-were-not-consulted-before-portland-troop-call-up/ [https://perma.cc/4HGN-EHGG] ................................................................................15

Brooke Herbert, et al., *How Portland's ICE Protests Took the National Stage*, Or. Pub. Broad. (Feb. 27, 2026, 9:00 AM), https://www.opb.org/article/2026/02/27/national-guard-portland-ice-protests/ [https://perma.cc/T3CR-PR2K] ......................................................................3

Carlos Fuentes & Zane Sparling, *Feds Repeatedly Use Tear Gas, Pepper Spray on Crowd of Hundreds Outside Portland ICE*, The Oregonian/Oregon Live (Oct. 19, 2025, 1:12 PM), https://www.oregonlive.com/portland/2025/10/small-but-growing-crowd-gathers-outside-portland-ice-live-updates.html [https://perma.cc/E344-WXR5]......................2

Claire Rush & Chris Megerian, *Trump Says He Will Send Troops to Portland, Oregon, in Latest Deployment to US Cities*, AP News (Sept. 27, 2025, 10:47 PM PST), https://apnews.com/article/trump-federal-troops-portland-oregon-f8659de72f28289ef22bd924d149a52f [https://perma.cc/5LH4-PFX4] ......................2

Conrad Wilson & Troy Brynelson, *Dueling Narratives on Portland Protests Head to Court in National Guard Case*, Or. Pub. Broad. (Oct. 3, 2025, 9:02 AM), https://www.opb.org/article/2025/10/03/portland-protests-court-national-guard-case-dueling-narratives/ [https://perma.cc/4CXL-4JTS]................................2

Conrad Wilson, *What We Know — and Don't Know — About Troops in Portland*, Or. Pub. Broad. (Oct. 15, 2025, 9:00 AM), https://www.opb.org/article/2025/10/15/national-guard-troops-portland-president-trump-law/ [https://perma.cc/26YW-C5UL] ............................................2

David S. Ardia, *Court Transparency and the First Amendment*, 38 Cardozo L. Rev. 835 (2017) ......................................................................................5

Filip Timotija, *Trump's Deployment of National Guard Costs Taxpayers Nearly $500 Million, CBO Says*, The Hill (Jan. 28, 2026, 4:13 PM ET), https://thehill.com/policy/defense/5711415-national-guard-troops-taxpayer-burden/ [https://perma.cc/M6RG-9WUV] ..............................................11

Jonathan Shorman, *Trump's National Guard Deployments Raise Worries About State Sovereignty*, Or. Cap. Chron. (Oct. 24, 2025, 6:00 AM), https://oregoncapitalchronicle.com/2025/10/24/repub/trumps-national-guard-deployments-raise-worries-about-state-sovereignty/ [https://perma.cc/M6HA-T9UD] .............................................2

Maxine Bernstein, *Federal Judge Rejected Claims that Oregon Sanctuary Law Hampered Police Outside ICE Facility*, The Oregonian (Nov. 11, 2025, 1:10 PM), https://www.oregonlive.com/crime/2025/11/federal-judge-rejected-claims-that-oregon-sanctuary-law-hampered-police-outside-ice-facility.html [https://perma.cc/YME2-3KWC]...........................................15

Maxine Bernstein, *Federal Officials Testify Portland Police Failed to Protect ICE Building Amid Protests*, The Oregonian (Oct. 31, 2025, 10:06 AM), https://www.oregonlive.com/crime/2025/10/federal-officials-testify-portland-police-failed-to-protect-ice-building-amid-protests.html [https://perma.cc/PZE7-BR4P] .......................................15

Maxine Bernstein, *Oregon Lawyers Seek to Use Evidence from National Guard Case for Potential Criminal Inquiry*, The Oregonian (Feb. 24, 2026, 11:22 AM), https://www.oregonlive.com/crime/2026/02/oregon-lawyers-seek-to-use-evidence-from-national-guard-case-for-potential-criminal-inquiry.html [https://perma.cc/SE6V-R8JW] .......................................12

Robert Cantu and William Turner. Maxine Bernstein, *Trial Over Troops Ordered to Portland Will Showcase Tension Between Local Police, Federal Officers*, The Oregonian (Oct. 29, 2025, 4:00 PM), https://www.oregonlive.com/crime/2025/10/trial-over-troops-ordered-to-portland-will-showcase-tension-between-local-police-federal-officers.html [https://perma.cc/QL7W-4HD5] .......................................15

Shaanth Nanguneri, *Can Oregon Ban Masks for Federal Officers? Democrats Disagree*, Oregon Capital Chronicle (Feb. 2, 2026, 5:11 PM), https://www.oregonlive.com/politics/2026/01/can-oregon-ban-masks-for-federal-officers-democrats-disagree.html [https://perma.cc/9A4X-KX7J] ...........................16

Troy Brynelson, et al., *'Portland Stands With You': Mayor Keith Wilson Condemns Minneapolis ICE Shooting*, Or. Pub. Broad. (Jan. 8, 2026, 2:18 PM), https://www.opb.org/article/2026/01/07/oregonians-react-to-fatal-shooting-in-minneapolis-by-ice-officer/ [https://perma.cc/RWY7-8T6G]; ...........................3

*Trump Deploys 200 Oregon National Guard Troops Into Portland,* KPTV (Sept. 29, 2025, 11:32 AM), https://www.kptv.com/video/2025/09/29/trump-deploys-200-oregon-national-guard-troops-into-portland/ ...........................2

## **LR-7-1 CERTIFICATION**

Counsel for non-party media organizations the Associated Press, Gray Local Media, Inc., Oregon Capital Chronicle, Oregon Public Broadcasting, and Oregonian Media Group (collectively, "Media Intervenors"), certifies that they conferred with counsel for the State of Oregon, the City of Portland, and the State of California (collectively, "Plaintiffs"), and counsel for Donald Trump, Pete Hegseth, the U.S. Department of Defense, Kristi Noem, and the U.S. Department of Homeland Security (collectively, "Defendants"), by telephone and email regarding this Motion.

Notwithstanding that conferral, the parties could not reach agreement on the substantive relief sought by Media Intervenors. As to the discrete issue of whether documents should be unsealed and witness identities disclosed, Defendants oppose this motion and Plaintiffs take no position.

## **MOTION**

Media Intervenors hereby move this Court to (1) unseal all trial exhibits sealed pursuant to the Court's Order granting Defendants' Motion to Seal, ECF 121, (2) order that Plaintiffs file publicly accessible motions to seal the declarations of National Guard Brigadier General Alan R. Gronewold, and (3) disclose the identities of all witnesses at trial. This Motion is supported by the following memorandum of law.

## **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO UNSEAL**

This Court was tasked with the question of whether President Trump's deployment of the National Guard to the American interior was lawful. *Oregon v. Trump*, 802 F. Supp. 3d 1277, 1281–82 (D. Or. 2025). Like challenges to other of President Trump's policies, this case surfaced profound questions relating to the scope of executive power and the role of the courts

in defining that scope. *Id.* at 1281. These are not just legal questions of interest to scholars and government officials; they are questions that implicate the foundation of our democratic society and impact every member of the public.

To fulfill their unique role in informing the public about these significant matters, the Associated Press, Gray Local Media, Inc., Oregon Capital Chronicle, Oregon Public Broadcasting, and Oregonian Media Group (collectively, "Media Intervenors") have produced accurate, timely, and extensive coverage of the Trump administration's immigration enforcement operations, including the National Guard's federalized deployment to Portland.[1] Media Intervenors' work has been instrumental in documenting the developments on the ground and drawing attention to the disconnect between this Administration's statements, statements made by government officials in court, and evidence at the scene.[2] Media Intervenors have also

---

[1] *See, e.g.*, Claire Rush & Chris Megerian, *Trump Says He Will Send Troops to Portland, Oregon, in Latest Deployment to US Cities*, AP News (Sept. 27, 2025, 10:47 PM PST), https://apnews.com/article/trump-federal-troops-portland-oregon-f8659de72f28289ef22bd924d149a52f [https://perma.cc/5LH4-PFX4]; *Trump Deploys 200 Oregon National Guard Troops Into Portland*, KPTV (Sept. 29, 2025, 11:32 AM), https://www.kptv.com/video/2025/09/29/trump-deploys-200-oregon-national-guard-troops-into-portland/; Conrad Wilson, *What We Know — and Don't Know — About Troops in Portland*, Or. Pub. Broad. (Oct. 15, 2025, 9:00 AM), https://www.opb.org/article/2025/10/15/national-guard-troops-portland-president-trump-law/ [https://perma.cc/26YW-C5UL]; Carlos Fuentes & Zane Sparling, *Feds Repeatedly Use Tear Gas, Pepper Spray on Crowd of Hundreds Outside Portland ICE*, The Oregonian/OregonLive (Oct. 19, 2025, 1:12 PM), https://www.oregonlive.com/portland/2025/10/small-but-growing-crowd-gathers-outside-portland-ice-live-updates.html [https://perma.cc/E344-WXR5]; Jonathan Shorman, *Trump's National Guard Deployments Raise Worries About State Sovereignty*, Or. Cap. Chron. (Oct. 24, 2025, 6:00 AM), https://oregoncapitalchronicle.com/2025/10/24/repub/trumps-national-guard-deployments-raise-worries-about-state-sovereignty/ [https://perma.cc/M6HA-T9UD].

[2] *See, e.g.*, Conrad Wilson & Troy Brynelson, *Dueling Narratives on Portland Protests Head to Court in National Guard Case*, Or. Pub. Broad. (Oct. 3, 2025, 9:02 AM), https://www.opb.org/article/2025/10/03/portland-protests-court-national-guard-case-dueling-narratives/ [https://perma.cc/4CXL-4JTS].

covered the public outcry and the various community and local government efforts to hold the federal government accountable, which have only intensified since this case was brought.[3]

Against this backdrop of continued community interest and robust public debate, it is imperative that the media and the public have a full understanding of what transpired before this Court. To that end, Media Intervenors seek to unseal presumptively public court records and to disclose the identities of witnesses who were allowed to testify under initials.[4] Defendants have not established that there are compelling reasons to shield this information from the public. Nor have they established that any possible justification for secrecy outweighs the public's First Amendment and common law right of access to court records and proceedings. Accordingly, the court records should be promptly unsealed, and the witnesses' identities must be disclosed.

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiffs initiated this action against Defendants, challenging the federalization and deployment of the National Guard in Portland, Oregon. ECF 1. Plaintiffs moved for a temporary restraining order on September 29, 2025. ECF 6. In support, Plaintiffs submitted, among other documents, a sealed declaration from National Guard Brigadier General Alan R. Gronewold. *See* ECF 34 (redacted declaration); ECF 70 (docketing sealed declaration). On October 5, 2025, Plaintiffs moved for a second temporary restraining order. Plaintiffs submitted a sealed supplemental declaration from Brigadier General Gronewold. *See* ECF 63 (redacted declaration);

---

[3] *See, e.g.*, Troy Brynelson, et al., *'Portland Stands With You': Mayor Keith Wilson Condemns Minneapolis ICE Shooting*, Or. Pub. Broad. (Jan. 8, 2026, 2:18 PM), https://www.opb.org/article/2026/01/07/oregonians-react-to-fatal-shooting-in-minneapolis-by-ice-officer/ [https://perma.cc/RWY7-8T6G]; Brooke Herbert, et al., *How Portland's ICE Protests Took the National Stage*, Or. Pub. Broad. (Feb. 27, 2026, 9:00 AM), https://www.opb.org/article/2026/02/27/national-guard-portland-ice-protests/ [https://perma.cc/T3CR-PR2K].

[4] In a forthcoming motion, Media Intervenors also intend to challenge confidentiality designations of certain documents and information produced in discovery.

ECF 71 (docketing sealed declaration). The public cannot know what the nature of the redacted information is because there are no related motions to seal on the public docket.

In anticipation of trial, Defendants preemptively moved to seal certain trial exhibits and close the courtroom when those exhibits were being discussed or displayed. *See* ECF 121. The motion was unopposed. *Id.* The Court did not rule on Defendants' request before trial. *See* ECF 121–25. At the pretrial conference on October 28, 2025, Defendants explained that there were two categories of documents covered by their sealing request: "a couple of documents from the Department of Defense" and "incident reports that are ongoing investigations." ECF 139 at 48:10– 15. Defendants also expressed generalized fears of "doxxing," and requested that two of their witnesses, who are Federal Protective Services officers, be afforded extra security measures to protect their identities. *Id.* at 52:1–15. After Plaintiffs did not object, and without any inquiry into whether the fear was credible, the Court directed the parties to refer to these two witnesses only by their initials. ECF 141 at 14:2–13.

This Court held a three-day consolidated preliminary injunction hearing and bench trial beginning on October 29, 2025. At trial, exhibits that Defendants alleged were confidential were received into evidence in open court but sealed from public inspection such that only the Court, the Parties, and the witnesses could see the documents. *See id.* at 14:19–22. None of the exhibits, including those that were admitted without restriction, have been docketed. Consistent with the Court's oral ruling granting the request for certain witnesses to testify using initials, the trial transcripts do not reveal the full names of the anonymous witnesses. *See* ECF 140–45.

The Court granted declaratory and permanent injunctive relief on November 7, 2025. ECF 146. On November 19, 2025, the Court granted the motion to seal trial exhibits in a text-only order. ECF 149. On December 9, 2025, Defendants filed an unopposed motion to file

Exhibits 137 and 1152 under seal. ECF 153, 155. Docket numbers 28, 55, 61, 64, and 154 are omitted from the public docket.[5]

## II.    ARGUMENT

Open courts are a fundamental feature of the American legal system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569–73, 573 n. 9 (1980) (describing Supreme Court's longstanding recognition of open access to courts); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy . . . judicial records and documents."). Rooted in both common law and the First Amendment, "[t]he presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)); *see Associated Press v. U.S. Dist. Ct. for Cent. Dist. of California*, 705 F.2d 1143, 1145 (9th Cir. 1983) (noting that court records "are often important to a full understanding of the way in which the judicial process and the government as a whole are functioning" (internal quotations omitted)). Because "courts are where government power is contested, defined, and ultimately actualized . . . public access to the courts aids in legitimizing the exercise of all governmental powers." David S. Ardia, *Court Transparency and the First Amendment*, 38 Cardozo L. Rev. 835, 906 (2017); *see Richmond Newspapers*, 448 U.S. at 572 ("People in an open society do not demand infallibility from their

---

[5] Docket text shows that ECF 55 and 64 are orders on motions to seal. *See* ECF 70, 71. Media Intervenors surmise that ECF 28 and 61 are the corresponding motions to seal.

institutions, but it is difficult for them to accept what they are prohibited from observing."). Accordingly, the value of transparency in judicial proceedings cannot be overstated.

"In keeping with the strong public policy favoring access to court records, most judicial records may be sealed only if the court finds 'compelling reasons.'" *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (quoting *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677–78 (9th Cir. 2010)). Like the sealing of documents, the improper use of pseudonyms "runs afoul" of the public's right of access to judicial proceedings and should only be allowed in special circumstances. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000); *See Quair v. Bega*, 232 F.R.D. 638, 641–42 (E.D. Cal. 2005) (same for witness anonymity).

In this case, the Court sealed presumptively public court records and allowed two government witnesses to testify under pseudonym. Where Plaintiffs moved to seal information, the grounds for sealing are unavailable to the public. And where Defendants argued in favor of secrecy, they argued it was justified because disclosure of information would undermine law enforcement operations or put government witnesses at risk of doxxing. But Defendants failed to provide any individualized facts that supported their sweeping arguments as required by well-established law protecting the public's right of access to court records and proceedings. Because the record does not reflect sufficient evidence to justify shielding information from public view, Media Intervenors now request that the Court unseal court records and amend the transcript to disclose the names of witnesses R.C. and W.T.

**A. The Court should unseal the trial exhibits because there are no compelling reasons for secrecy that outweigh the public's right of access.**

  **1. The applicable legal standard is the stringent "compelling reasons" standard.**

The documents submitted into evidence at trial are presumptively public. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (recognizing that the common law right of access attaches to all judicial documents except those "traditionally kept secret"); *Forbes Media LLC v. United States*, 61 F.4th 1072, 1077 (9th Cir. 2023) (recognizing that, under the First Amendment, "[t]he public generally has presumptive access to judicial opinions, hearings, and court filings"). A party seeking to seal a judicial record "bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana*, 447 F.3d at 1178; *see In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008) (noting that the First Amendment presumption of access can only be "overcome by a compelling governmental interest"). That standard requires the party to "articulate compelling reasons supported by specific factual findings" that "outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (quotation omitted).

In their motion to seal, Defendants wrongly asserted that the party seeking to seal documents must make a "'particularized showing' under the 'good cause' standard of Rule 26(c)." ECF 121 at 2 (quoting *Kamakana*). That standard is less stringent than the "compelling reasons" standard—and it is inapplicable in this case. Rule 26(c)'s "good cause" standard only applies to discovery documents attached to non-dispositive motions. *Kamakana*, 447 F.3d at 1180. For those documents, which are often "unrelated, or only tangentially related, to the underlying cause of action," the Court "carved out an exception to the presumption of access" because "the public has less of a need" to access them to fully understand judicial decisions. *Id.* at 1179 (quotations omitted). The documents at issue here—trial transcripts and exhibits—are

not discovery documents attached to non-dispositive motions, so the "good cause" standard of Rule 26(C) does not apply. Instead, to meet their burden, Defendants were required to satisfy the compelling reasons standard. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. C 09-3329 CW, 2014 WL 12997312, at *1 (N.D. Cal. June 10, 2014) ("Trial exhibits may only be sealed for compelling reasons."); *Microsoft Corp. v. Motorola, Inc*., No. C10-1823JLR, 2013 WL 12320923, at *1 (W.D. Wash. Apr. 19, 2013) ("The court reminds the parties that in the Ninth Circuit, 'compelling reasons' in favor of sealing must be shown for redactions to records and testimony presented at trial."). As described below, no compelling reason exists here.

### 2. *Defendants have not provided articulable facts demonstrating that there are compelling reasons to seal the trial exhibits.*

To satisfy their burden under the compelling reasons standard, Defendants were required to "present 'articulable facts' identifying the interests favoring continued secrecy." *Kamakana*, 447 F.3d at 1181 (citation omitted). They have failed to do so.

Defendants asserted that public disclosure of Exhibits 1001-1045 and 1141-1151 "may allow criminals to better predict and evade law enforcement and countermeasures." ECF 121 at 3; *see* ECF 139 at 48:13–15 (alleging that the documents are "incident reports that are ongoing investigations"). Defendants also argued that Exhibits 1060 and 1061 must be sealed because those documents contained controlled unclassified information. ECF 121 at 3. Those "conclusory offerings do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents." *Kamakana*, 447 F.3d at 1182.

Instead, Defendants make a "blanket claim" of "law enforcement" not unlike the one the Ninth Circuit has already rejected. *Id.* at 1185. In *Kamakana*, the Ninth Circuit held that the city-defendant's "conclusory statements" that law enforcement documents were "confidential" and that their production would "hinder [law enforcement's] future operations . . . , endanger

informants' lives, and cast . . . officers in a false light" were not "sufficiently specific." *Id.* at 1182. Following *Kamakana*, courts within the Ninth Circuit have declined to seal documents for similar reasons where the proponents of secrecy did not meet their factual burden. *See, e.g.,* *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Arizona*, 156 F.3d 940, 950 (9th Cir. 1998) (disapproving lower court's failure to "explain the necessary connection between unsealing the transcript and inflicting irreparable damage upon the security concerns it invoked as a compelling interest"); *Motley v. City of Fresno, California*, No. 1:15-CV-00905-DAD-BAM, 2016 WL 1060144, at *2 (E.D. Cal. Mar. 17, 2016) (explaining that defendants' "generalized concerns" that publication of law enforcement materials would "allow criminals to evade law enforcement and inflict harm on the public" was insufficient); Order Den. Mots. to Seal, ECF 81 at 4, *Lawman v. City & Cnty. of San Francisco*, No. 15-cv-01202 (N.D. Cal. Feb. 5, 2016) (denying motion to seal portions of deposition testimony on police department training scenarios because government failed to offer "specifics about how disclosure . . . would impact the 'integrity' of police officer testing and training").

To establish a factual basis supporting their allegations, Defendants needed to build an evidentiary record showing more than "hypothesis or conjecture." *Kamakana*, 447 F.3d at 1179; *see California ex. rel. Lockyer v. Safeway, Inc.*, 355 F. Supp. 2d 1111, 1116 (C.D. Cal. 2005) (holding that the two declarations defendants submitted did not provide enough detail to make a "specific factual showing"). At minimum, they could have explained how exactly disclosure of information would lead "criminals" to "evade" law enforcement. *See Quair*, 232 F.R.D. at 641 (holding that the seven declarations submitted by petitioner were speculative because they didn't establish whether the purported intimidator has the "power to carry out the threat"). Instead, Defendants assert that making the exhibits accessible to the public "may" threaten law

enforcement, and "could" undermine operations. ECF 121 at 3. As it stands, the record requires this court to make an "impermissibly long chain of inferences based on conjecture that is otherwise unsupported by the facts in the record." *Safeway*, 355 F. Supp. 2d at 1117 ("Statements that Defendants are 'considering' using 'similar' agreements lack sufficient specificity to establish compelling reasons to limit the public's access . . . . We decline to engage in such speculation").

Ultimately, the Court did not make the required specific findings on the record supporting the conclusion that sealing was proper. *See Kamakana,* 447 F.3d at 1179. Nor could it because Defendants presented only generalized statements that disclosure of the trial exhibits would "undermine public safety and law enforcement operations." ECF 121 at 3. Such statements are insufficient to establish compelling reasons to seal. *Kamakana*, 447 F.3d at 1182. Because "[a] failure to meet that burden means that the default posture of public access prevails," *id.*, the Court must unseal the trial exhibits.

### 3. Defendants' asserted reasons for secrecy do not outweigh the public's interest in access.

Even if this Court decides that Defendants have established compelling reasons for sealing, before sealing a record the Court must first "conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Chrysler*, 809 F.3d at 1097 (alteration in original) (quotation omitted). Here, transparency would further multiple public interests and the scale tips in favor of disclosure.

First, the public has an interest in learning what led to the unprecedented federalized deployment of the National Guard, and what led to its withdrawal. As the Ninth Circuit has explained, the public's understanding of "significant public events" is "at the heart of the interest in ensuring public access." *Kamakana*, 447 F.3d at 1179; *see Unknown Parties v. Johnson*, No.

CV-15-00250-TUC-DCB, 2016 WL 8199309, at *4 (D. Ariz. June 27, 2016) ("The interest in access to court proceedings in general may be asserted more forcefully when the litigation involves matters of significant public concern." (citation modified)).

Next, there is a particular public interest in understanding the Court's decision-making because its decisions impact not just the Parties, but also the general public. As this Court recognized, "the issues at stake in this case are important, and the consequences of this Court's decision are far-reaching." *Trump*, 802 F. Supp. 3d at 1296. Indeed, the issues before the Court pertained to the very foundations of our system of democratic governance. As public debate about separation of powers and federalism continues, the public's interest in understanding the Court's role in this case heightens the public interest in transparency. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1035 (1991) (noting that courts "play a vital part in a democratic state, and the public has a legitimate interest in their operations").

Further, as courts have recognized, "the public has a strong interest in knowing how their tax dollars are spent." *Hernandez v. Cnty. of Monterey*, No. 13-CV-02354-BLF, 2023 WL 5418753, at *4 (N.D. Cal. Aug. 21, 2023). President Trump's deployment of National Guard has cost taxpayers nearly $500 million.[6] Taxpayers will also bear the costs of related litigation, including damages or attorneys' fees. Major pending lawsuits in Oregon include challenges to warrantless arrests and excessive use of force against protestors. *Dickinson v. Trump*, No. 3:25-CV-2170-SI, 2026 WL 279917, at *10 (D. Or. Feb. 3, 2026) (enjoining defendants from using chemical or projectile munitions against people protesting outside the Portland ICE building); *M-J-M-A- v. Hermosillo*, No. 6:25-CV-02011-MTK, 2026 WL 562063, at *24 (D. Or. Feb. 27,

---

[6] Filip Timotija, *Trump's Deployment of National Guard Costs Taxpayers Nearly $500 Million, CBO Says*, The Hill (Jan. 28, 2026, 4:13 PM ET), https://thehill.com/policy/defense/5711415-national-guard-troops-taxpayer-burden/ [https://perma.cc/M6RG-9WUV].

2026) (concluding there is "ample evidence" demonstrating " a high likelihood—if not a certainty" that ICE is engaging in a pattern and practice of unlawfully arresting noncitizens without warrants).

Finally, there is a significant public interest in scrutinizing the conduct of law enforcement agents to ensure they use legal authority legitimately. *See ACLU of Oregon. v. City of Eugene*, 380 P.3d 281, 298 (Or. 2016). Though the National Guard has been withdrawn, the events giving rise to this case—protests against the conduct of federal immigration enforcement agents in Portland—remain the subject of litigation and vigorous public debate.[7] Allegations of possible misconduct are not speculative: the State of Oregon has sought the Court's permission to use documents produced in this litigation to "to investigate, charge, or prosecute crimes." ECF No. 160 at 3.[8]

After "conscientiously balanc[ing]" the public's significant interest in the trial exhibits with Defendants' general and speculative interests in secrecy, the Court should unseal the requested records. *Kamakana*, 447 F.3d at 1179 (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003).

### B. The Court Must Allow Media Intervenors A Meaningful Opportunity to Challenge the Sealing of Documents For Which There Is No Motion to Seal.

There are four presumptively public sealed documents on the docket for which there is no publicly available motion to seal: two additional trial exhibits, ECF 155, and two declarations

---

[7] *See, e.g.*, Alex Baumhardt, *Federal Judge Restricts Agents' Use of Tear Gas, Munitions Against Crowds at Portland ICE Facility*, Oregon Capital Chronicle (Feb. 3, 2026, 3:51 PM), https://oregoncapitalchronicle.com/2026/02/03/federal-judge-restricts-agents-use-of-tear-gas-munitions-against-crowds-at-portland-ice-facility/ [https://perma.cc/ZGZ8-GRKP].

[8] Maxine Bernstein, *Oregon Lawyers Seek to Use Evidence from National Guard Case for Potential Criminal Inquiry*, The Oregonian (Feb. 24, 2026, 11:22 AM), https://www.oregonlive.com/crime/2026/02/oregon-lawyers-seek-to-use-evidence-from-national-guard-case-for-potential-criminal-inquiry.html [https://perma.cc/SE6V-R8JW].

submitted in support of Plaintiffs' requests for temporary restraining orders. ECF 70, 71. It is not clear on what grounds these documents were sealed. But the law is clear that "if a court contemplates sealing a document . . . it must provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives." *Phoenix Newspapers*, 156 F.3d at 949. Only in "rare circumstances" can a motion to seal be itself under seal. *Gonzalez v. US Hum. Rts. Network*, No. CV-20-00757-PHX-DWL, 2021 WL 4458237, at *1 (D. Ariz. Sept. 29, 2021). In those cases, a party should "then file in the public record a motion to seal the other motion to seal." *Id.*

Consistent with these principles, Media Intervenors ask that this Court order the Parties to file publicly available motions to seal the documents found at ECF 70, 71, and 155. Media Intervenors reserve the right to be heard on whether continued sealing is warranted.

### C. The Court Should Correct the Trial Transcript to Include the Full Names of the Witnesses Who Testified Using Initials.

The Court improperly allowed Defendants' witnesses R.C. and W.T. to testify anonymously at trial. ECF 141 at 14:2–13. Courts may permit parties or witnesses to proceed anonymously only "when special circumstances justify secrecy." *Does I thru XXIII*, 214 F.3d at 1067. In such cases, the court must evaluate "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation," weighed against the public's interest in access. *Id.* at 1068 (citation modified).

The Court did not engage in this analysis. Nor could it. Defendants presented a short, vague statement about "doxxing" as their justification for allowing the witnesses to testify using their initials. After conceding that they did not view this request as a "significant issue," Defendants proclaimed that "there has been significant doxxing of the [federal officers] involved." ECF 139 at 48:1–15 The next day, before the start of trial, Defendants proposed the

use of initials to the Court, with the only justification provided being that "two of [their] witnesses, who are FPS officers, are concerned about their privacy and . . . personal safety." ECF 141 at 13:10–15. As discussed below, this showing by Defendants is not sufficient for the Court to engage in any meaningful analysis.

### 1. Defendants have not established that R.C. and W.T. have a reasonable fear and are vulnerable to experiencing harm if their identities are disclosed.

As an initial matter, the Court cannot evaluate Defendants claim of threatened harm because, as described in the above section, Defendants' claims of "doxxing" are factually unsupported. *See La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*, 2008 WL 11411715, No. 8:07-cv-250-DOC-AN, at *4 (C.D. Cal. Feb. 28, 2008) (holding that there was no credible threat because the evidence provided was "factually unsupported, vague, conclusory, and speculative"). Defendants must point to specific evidence detailing where the threat is coming from and how likely it is that harm will occur. *See Does I thru XXIII*, 214 F.3d at 1064–65 (evidence filed with the district court and testimony from impacted workers); *Quair*, 232 F.R.D. at 638 (seven declarations); *La Asociación*, 2008 WL 11411715, at *4 (declarations and newspaper articles). Without that evidence, courts cannot make "specific findings" as to the severity and likelihood of the threat of harm. *Phoenix Newspapers*, 156 F.3d at 949; *see Does I thru XXIII*, 214 F.3d at 1067. Further, Defendants have provided no evidence demonstrating a meaningful nexus between disclosure and the harm Defendants allege. It is neither reasonable nor likely that disclosing their full names would significantly heighten any existing risk of harm given the witnesses' existing public exposure. The pseudonyms are easily traceable to the full names on the record because the initials used were R.C. and W.T., which correspond to the full names disclosed in a witness list submitted before trial. *See* ECF 95, 143. R.C.'s full name and

details about his job responsibilities are available elsewhere on the docket. *See* ECF 40. Some

media reports have already identified the witnesses by name.[9] As such, there is no reason that

publishing the witnesses' full names in the trial transcripts would significantly heighten that

risk. *See Mitchell v. Cate*, No. 2:11-CV-1240 JAM AC, 2014 WL 1671589, at \*5 (E.D. Cal.

Apr. 28, 2014) (denying motion to seal exhibit over defendants' safety and security argument

because information was already elsewhere in the record).

> ### 2. *Defendants' asserted reasons for secrecy do not outweigh the public's strong presumption of access.*

As with the unsealing of records, disclosing R.C.'s and W.T.'s names would further

significant public interests, particularly during a time when the concealing of identities of

---

[9] On October 28, 2025, the day before the trial began, The Oregonian reported on the witnesses the Defendants intended to call during the trial, disclosing the full names and job titles of both Robert Cantu and William Turner. Maxine Bernstein, *Trial Over Troops Ordered to Portland Will Showcase Tension Between Local Police, Federal Officers*, The Oregonian (Oct. 29, 2025, 4:00 PM), https://www.oregonlive.com/crime/2025/10/trial-over-troops-ordered-to-portland-will-showcase-tension-between-local-police-federal-officers.html [https://perma.cc/QL7W-4HD5]. In an article published on October 30, the first day that Cantu and Turner testified under pseudonyms, The Oregonian published Cantu's full name, noting that he testified under the pseudonym "R.C.," but that his full name was in multiple court documents, including the federal government's publicly filed witness list. Maxine Bernstein, *Federal Officials Testify Portland Police Failed to Protect ICE Building Amid Protests*, The Oregonian (Oct. 31, 2025, 10:06 AM), https://www.oregonlive.com/crime/2025/10/federal-officials-testify-portland-police-failed-to-protect-ice-building-amid-protests.html [https://perma.cc/PZE7-BR4P]. The Oregon Capital Chronicle and Willamette Week similarly identified R.C. as Cantu during the trial. Alex Baumhardt, *Lawyers Scrutinize Federal Law Enforcement Numbers on Second Day of Oregon National Guard Trial*, Oregon Capital Chronicle (Oct. 30, 2025, 6:11 PM), https://oregoncapitalchronicle.com/2025/10/30/lawyers-scrutinize-federal-law-enforcement-numbers-on-second-day-of-oregon-national-guard-trial/ [https://perma.cc/BN88-R2B8]; Andrew Schwartz, *Regional Federal Security Chiefs Were Not Consulted Before Portland Troop Call-Up*, Willamette Week (Oct. 30, 2025, 7:51 PM PDT), https://www.wweek.com/news/2025/10/30/regional-federal-security-chiefs-were-not-consulted-before-portland-troop-call-up/ [https://perma.cc/4HGN-EHGG]. Shortly after the trial, The Oregonian also identified witness "W.T." as Will Turner. Maxine Bernstein, *Federal Judge Rejected Claims that Oregon Sanctuary Law Hampered Police Outside ICE Facility*, The Oregonian (Nov. 11, 2025, 1:10 PM), https://www.oregonlive.com/crime/2025/11/federal-judge-rejected-claims-that-oregon-sanctuary-law-hampered-police-outside-ice-facility.html [https://perma.cc/YME2-3KWC].

immigration enforcement officials is the subject of public debate.[10] *See supra* Section II.A.2. The public's interest in the corrected transcripts is especially strong in this case because the Court's decision to allow the witnesses to proceed under initials is now being used as a justification to limit disclosure of some discovery materials. The parties have interpreted the Court's oral ruling regarding the restriction on witness identities as barring the production of those witnesses' video depositions. ECF 160 at 2–3. Those video depositions would normally be disclosed as responsive to requests under the Oregon Public Records Law. *See* ORS 192.311 *et seq.*

Because the presumption of access has not been outweighed, this Court should reverse course and docket a corrected transcript disclosing the witnesses' full names. And even if the Court denies this request, it should make clear that its ruling was limited solely to the issue of the witnesses' anonymity at trial.[11]

## III.    CONCLUSION

As the Supreme Court has noted, "[t]he peculiar value of news is in the spreading of it while it is fresh," *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 235 (1918). Accordingly, Media Intervenors respectfully request that the Court promptly consider and grant this motion so that they can continue to report on the matters of significant public concern implicated in this case.

---

[10] For example, Oregon legislators have proposed two acts aimed at law enforcement officers concealing their identities. *See* Shaanth Nanguneri, *Can Oregon Ban Masks for Federal Officers? Democrats Disagree*, Oregon Capital Chronicle (Feb. 2, 2026, 5:11 PM), https://www.oregonlive.com/politics/2026/01/can-oregon-ban-masks-for-federal-officers-democrats-disagree.html [https://perma.cc/9A4X-KX7J].

[11] In a forthcoming motion, Media Intervenors will challenge confidentiality designations pursuant to the stipulated protective order entered on October 16, 2025, including the confidentiality designation of the two video depositions. *See* ECF 88.

Dated: March 6, 2026                     Submitted,

                                         /s/ Athul Acharya
                                         Athul Acharya, OSB #152436
                                         Sara Rosenburg*
                                         PUBLIC ACCOUNTABILITY
                                         P.O. Box 14672
                                         Portland, OR 97211

                                         Shelby Leighton*
                                         Mariam Elbakr*
                                         PUBLIC JUSTICE
                                         1620 L Street NW, Suite 630
                                         Washington, DC 20036

                                         Leila Nasrolahi*
                                         PUBLIC JUSTICE
                                         475 14th St., Suite 610
                                         Oakland, CA 94612

                                         *Counsel for All Media Intervenors*

                                         Jon Bial, OSB #002048
                                         Katia Alcantar, OSB #201714
                                         OREGON PUBLIC BROADCASTING
                                         7140 S Macadam Avenue
                                         Portland, OR 97219

                                         *Counsel for Oregon Public Broadcasting*

                                         *\*pro hac vice application forthcoming*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2 because it contains 4,745 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.