BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON (NE Bar No. 25886)
Deputy Assistant Attorney General
ALEXANDER K. HAAS (CA Bar No. 220932)
Branch Director
JEAN LIN (NY Bar No. 4074530)
Special Litigation Counsel
TIBERIUS DAVIS (DC Bar No. 90020605)
JOHN BAILEY (Ohio Bar No. 104260)
Counsel to Assistant Attorney General
J. STEPHEN TAGERT (VA Bar No. 99641)
KATHLEEN C. JACOBS (TX Bar No. 24091154)
KIAN AZIMPOOR (DC Bar No. 90024613)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 305-5486
stephen.tagert@usdoj.gov
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

|  |  |
|---|---|
| STATE OF OREGON, *et al.* | |
| *Plaintiffs*, | Case No. 3:25-cv-01756 |
| v. | **Response to State of Oregon's Motion to Modify Protective Order and Clarify the Confidentiality Status of Certain Deposition Videos** |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| *Defendants.* | |

**INTRODUCTION**

Plaintiff the State of Oregon seeks to modify the Protective Order governing confidential and highly confidential information that Defendants produced under an extremely expedited schedule for purposes of the trial this Court conducted in October 2025. Oregon now wants the ability to allow other components of the state government to comb through the information to fish for information for potential criminal prosecution. Defendants of course do not wish to stand in the way of any state criminal prosecution. But Plaintiffs do not point to any pending grand jury subpoena, active criminal investigation, or any specified need as support for their motion; instead, they ask for unfettered use of the Federal Government's confidential documents. This goes far beyond the purpose of the Protective Order in the context of civil discovery—and indeed, the case or controversy then pending before this Court—and unfairly prejudices the Federal Government. The Court should not grant Oregon's generalized request to facilitate unspecified or prospective investigative activity as such request is unsupported by caselaw. Further, the Court should not order Defendants to conduct cumbersome redactions at this stage as Plaintiffs have never challenged any particular designations beyond a claim of over redaction.

Plaintiffs also ask the Court to clarify whether the deposition videos of W.T. and R.C.—FPS officers who have faced threats because of their employment and participation in this case—can be released. Defendants request that the Court issue a protective order to prevent their release because of the threats both officers have faced and because their deposition transcripts have already been released to the public. Thus, there is no purpose to the videos' release as all non-confidential information contained in them has been released pursuant to Oregon's public records law.[1]

---

[1] The parties resolved the issue stated in Plaintiffs' footnote 1 regarding sharing descriptions of certain protected materials with plaintiffs in another litigation. *See* Pls.' Mot. to Modify Protective Order at 2 n.1, ECF No. 166.

**BACKGROUND**

**A.  The Protective Order**

Plaintiffs initiated this action on September 28, 2025, and moved for a Temporary Restraining Order on September 29, 2025. Compl., ECF No. 1; Mot. for TRO, ECF No. 6. This Court granted that motion on October 4, Opinion & Order, ECF No. 56, and extended its scope on October 5, 2025. Minutes of Proceedings, ECF No. 68. The Court also set the case for trial to begin less than a month later on October 29. Opinion & Order, ECF No. 56. The Court further ordered the parties to conduct expedited discovery by responding to all written discovery by October 22, providing exhibit lists by October 24, and concluding all depositions by October 27. Minutes of Proceedings, ECF No. 85.

Under those extremely expedited conditions for civil litigation, the parties agreed to a Protective Order, ECF No. 88, with the express purpose of ensuring the timely production of documents "relating to law enforcement and military personnel, strategy, and field operations." *Id.* § 1. The parties recognized that "the public disclosure of [those documents and information] could negatively impact those operations," so they "stipulate[d] to and petition[ed] the court to enter the . . . Stipulated Protective Order," while "acknowledge[ing] that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." *Id.* That Protective Order was heavily negotiated by the parties to ensure that each party had access to the relevant information necessary to litigate the issues in this case while simultaneously securing that confidential information from the public. If the parties chose to designate documents as protected, they could label as either

"Confidential"—meaning the information was "not in the public domain" and included certain set criteria making it exempt from being made public, *id.* § 2.2—or "Highly Confidential – Attorneys' Eyes Only"—meaning the information is "extremely confidential and/or sensitive in nature and the Designating Party reasonably believes that the disclosure of such material would create substantial risk of significant harm to the Designating Party that could not be avoided by less restrictive means." *Id.* § 2.7.

The parties agreed to be judicious in their designations by "tak[ing] care to limit any such designation to specific material that qualifies under the appropriate standards" and "designat[ing] for protection only those parts of material, documents, items, or oral or written communications that qualify." *Id.* § 5.1. Still, the parties could challenge designations of confidentiality "at any time" after a "dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge" with the possibility of judicial intervention regarding each individual challenge if the challenging party demonstrates that "there is good cause for doing so." *Id.* §§ 6.1-6.3. The Protective Order also allowed for disclosure in the event of a subpoena or court order in another litigation if this Court allowed such disclosure after the designating party moved for a Protective Order. *Id.* § 8.

The Protective Order extends "[e]ven after final disposition of this litigation," *id.* § 4, and it covers "(1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material." *Id.* § 3. The Protective Order further states that "[w]ithin 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material." *Id.* § 14.

3

**B.  This Motion**

Plaintiffs filed this Motion to modify the Protective Order so that they may "investigate, charge, or prosecute criminal conduct," Pls.' Mot. to Modify Protective Order at 2, ECF No. 166—something unrelated to this case's litigation. Plaintiffs explained that the focus of the investigations would be federal officers, saying they sought to share the documents for use in criminal investigations where "it appears a federal officer is engaging in conduct beyond the reasonable scope of their duties in executing and enforcing federal law." Ex. A, Oregon 2/18/26 email.

Additionally, they ask this Court to "clarify whether certain deposition videos may be disclosed pursuant to Oregon's Public Record law." Pls.' Mot. to Modify Protective Order at 8. Oregon does not appear to take a position on whether those videos should be disclosed and instead ask for the Court's guidance on whether they can be. *See id.* 9-10.

## ARGUMENT

## I.    The Court Should Not Modify the Protective Order

The Court should deny Plaintiffs' request to modify the Protective Order to allow Oregon's criminal division's hypothetical plan to fish through the protected information in search of some rationale to prosecute federal officers acting within the scope of their employment.

1. A party seeking to modify a protective order bears the burden of demonstrating good cause for modification. *See, e.g.*, *In re Soc. Media Adolescent Addiction*, No. 22-MD-03047-YGR (PHK), 2024 WL 251404, at *8 (N.D. Cal. Jan. 23, 2024) ("The party seeking the modification bears the burden of proving such good cause exists to modify the protective order"); *Pres. Techs. LLC v. MindGeek USA, Inc.*, No. 2:17-CV-08906-DOC-JPR, 2020 WL 10965256, at *1 (C.D. Cal. Dec. 15, 2020) ("Once the protective order has issued, a party may move to modify the order by establishing 'good cause' to do so."); *Brigham Young Univ. v. Pfizer, Inc.*, 281 F.R.D. 507, 510 (D. Utah 2012) ("The party seeking to modify a protective order bears the burden of showing good

cause for the modification."); *accord H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 555 (S.D.N.Y. 1985) ("[I]f the protective order was supported by a showing of good cause, the burden should be on the party seeking modification.").

Here, Plaintiffs have not demonstrated good cause for modifying the Protective Order, which was proposed to the Court after the parties extensively negotiated and after a similar protective order was entered in the parallel national guard litigation in California, of which Plaintiff California is a party. The parties recognized that there was good cause for entering the Order to ensure that there was a speedy "exchange [of] documents and information relating to law enforcement and military personnel, strategy, and field operations, the public disclosure of which could negatively impact those operations" and to ensure protection "only to the limited information or items that are entitled to confidential treatment under the applicable legal principles." Protective Order § 1. Indeed, the Protective Order seeks to protect not only information required to be protected by statute, *see, e.g.*, *id.* § 2.2(b)(iv), (vii), but also "information and internal policies and procedures for which disclosure could reasonably give rise to a risk of harm to information technology security, personnel security, or national security interests." *Id.* § 2.2(b)(iii).

As justification for modification, Oregon states that it should be "allow[ed] . . . to use protected discovery from this matter for law enforcement purposes, [such as] to investigate, charge, or prosecute [crimes]." Pls.' Mot. to Modify Protective Order at 2. But that type of proposed fishing expedition does not suffice because Plaintiffs have not demonstrated a "reasonable need" for the discovery. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). There is no pending collateral litigation where Oregon is a party and is seeking to avoid duplicative discovery, *see id.* at 475-76 (affirming a district court's grant of intervention to eliminate duplicative discovery in a different case where there was also a protective order in place); *Foltz v.*

5

*State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) (stating that material relevant to collateral litigation should generally be allowed "[w]here reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests"), or any grand jury subpoena related to a specific investigation that can potentially overcome the need for protecting information. *See In re Grand Jury Subpoena Served on Meserve, Mumper & Hughes*, 62 F.3d 1222, 1226 (9th Cir. 1995) (holding that grand jury subpoenas will generally prevail over a protective order). Those scenarios were explicitly contemplated by the Protective Order. Protective Order § 8 ("Protected Material Subpoenaed or Ordered Produced in Other Litigation").

Instead, Plaintiffs assert a broad interest in monitoring federal conduct and facilitating unspecified or prospective investigative activity. That generalized objective is qualitatively distinct from the concrete need that courts have recognized as sufficient to justify modification. *See Foltz*, 331 F.3d at 1131-33 (allowing the fruits of one litigation to be used in collateral litigation to avoid duplication of discovery). Courts have rejected modification requests grounded in similar investigative purposes. In *H.L. Hayden Co.*, the court declined to modify a protective order for purposes of facilitating investigative efforts, concluding that the movants (two states) failed to show good cause. 106 F.R.D. at 553-56. The states wanted to use the protected materials to investigate possible violations of state antitrust statutes. *Id.* at 552. Because the states were conducting only preliminary investigations, however, the movants failed to demonstrate circumstances sufficient to justify modification. *Id.* at 556-57 ("Perhaps the most important consideration is that neither New York nor Texas has an action pending against the defendants. Rather, the defendants are merely targets of the two states' 'preliminary investigations.'").

Likewise, in *Massachusetts v. Mylan Laboratories, Inc.*, the court denied a request to modify a protective order when the proposed disclosure was "amorphous and wide-ranging" and

6

designed to assist governmental entities in identifying "possible claims against possible defendants." 246 F.R.D. 87, 91 (D. Mass. 2007). That open-ended purpose did not rise to the level of a particularized showing necessary to warrant modification. *Id.* at 90-91.

Plaintiffs' request here is analogous: They seek unlimited access to protected materials to enable unspecified investigative activity without demonstrating any particular need. Plaintiffs' request thus amounts to a request for generalized access to confidential and highly confidential documents untethered to any need for modification. In fact, Oregon's request is even broader than the "amorphous and wide-ranging" disclosure proposed in *Mylan*; it seeks to allow access to all protected information produced in this case. And there is not even a specified preliminary investigation as was in *H.L. Hayden Co.* Of course, both cases denied the request for modification. The Court should do the same here.

2. Modifying the Protective Order now—after discovery closed and a final judgment entered—is also unfair because Defendants relied on those protections to speedily complete discovery in this case and to ensure that both parties had the information needed to try this case. It is well-recognized that protective orders serve to promote efficiency in discovery by assuring parties that sensitive information produced through disclosure will not be disseminated beyond the confines of the litigation, especially when discovery implicates significant privacy or governmental interests. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-36 (1984). "Modifying protective orders can . . . have the negative effect of creating distrust for such orders" because stipulated protective orders "allow the parties to make full disclosure in discovery without fear of unauthorized access to sensitive information and they reduce the expense and delay of endless discovery disputes." *Brigham Young Univ.*, 281 F.R.D. at 510. "The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow

discovery or to settle the case." *Beckman*,  966 F.2d at 475; *see also Foltz*, 331 F.3d at 1122-33 (holding that, in evaluating modification of a protective order, courts must weigh the producing party's reliance interests against policy favoring avoidance of duplicative discovery).

Here, Defendants relied on the protections in the Protective Order when speedily conducting discovery and ensuring that relevant documents and information were provided to Plaintiffs on an extremely expedited timeline. Now, months after final judgment, Plaintiffs seek to use the protected information for unstated investigatory reasons to determine whether criminal charges potentially could be brought against federal officers. The requested modification would retroactively alter the conditions under which discovery was conducted and undermine the reliance interests that protective orders are intended to foster. *See H.L. Hayden*, 106 F.R.D. at 553-56 (denying modification where state attorneys general sought discovery materials for preliminary investigative purposes and no collateral litigation was pending).

Oregon also argues that the United States' interests are protected because "the use of protected material for law enforcement purposes would not conflict with the Order's original purpose of protecting PII and sensitive law enforcement information from *public* disclosure." Pls.' Mot. to Modify Protective Order at 3. That's incorrect because it undermines the interests set out in the Protective Order. The Protective Order recognizes that the Designating Party has an interest in not only protecting documents disclosed in litigation (but not used in trial) from public disclosure, but also that the Designating Party has a property interest in limiting their use to the pending litigation only. Courts have long recognized that—both for the government and the private sector—there is a property right in confidential information. *See, e.g.*, *Carpenter v. United States,* 484 U.S. 19, 26 (1987) ("Confidential business information has long been recognized as property."); *United States v. Story Cnty.*, 28 F. Supp. 3d 861, 872 (S.D. Iowa 2014) (holding that

8

a county could not release emails located on the county server but sent and received by a county sheriff in his capacity as a member of a federal board because the records were "federal records and not subject to Iowa's Public Records Act"); *United States v. Napper*, 694 F. Supp. 897 (N.D. Ga. 1988) (holding that the City of Atlanta could not disclose FBI investigative files provided in confidence because those files were federal property), *aff'd*, 887 F.2d 1528 (11th Cir. 1989). That well-established principle is exhibited by the Protective Order's provision that a Receiving Party must return or destroy all Protected Materials within 60 days after final disposition of the litigation. Protective Order § 14. Disseminating the Protected Material would eviscerate that provision.

Oregon also invokes the public and private interest factors to say that its proposed modification is warranted. *See* Pls.' Mot. to Modify Protective Order at 6-7. But those factors do not apply because they are about whether the public is permitted to access the protected discovery information and whether to maintain a protective order at all. *See In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (discussing modification of protective orders in regard to whether the public is permitted to "access [] litigation documents and information produced during discovery" and whether the court should "maintain[] a protective order" (citation modified)). Plaintiffs do not argue that the Protective Order should be lifted, with good reason as both Plaintiffs and Defendants have an interest in maintaining their protected information. Thus, it does not matter whether Oregon can "investigate, charge, and prosecute criminal conduct" of federal officers or that both Oregon and Defendants are government entities. Pls.' Mot. to Modify Protective Order at 7. The question is whether Plaintiffs have demonstrated good cause to modify the Protective Order when there is no pending grand jury subpoena and no other ongoing litigation in which Oregon is involved, and Plaintiffs have not done so.

If anything, Defendants maintain that Oregon's stated purpose for modifying the protective

order—to potentially prosecute federal officials performing their official duties—is an invalid purpose because under the Supremacy Clause, the "activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943); *Arizona v. California*, 283 U.S. 423, 451 (1931) ("The United States may perform its functions without conforming to the police regulations of a state."). Supremacy Clause immunity thus entirely bars states from prosecuting federal officials performing official duties for violations of state law. "[E]ven the most unquestionable and most universally applicable of state laws, such as those concerning murder, will not be allowed to control the conduct of a [federal official] acting under and in pursuance of the laws of the United States." *Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920) (citing *In re Neagle*, 135 U.S. 1 (1890)). This unlawful purpose is yet another reason to deny the motion to modify the Protective Order.

3. Plaintiffs invert the good cause analysis by arguing that they don't have a burden to demonstrate good cause and that the burden is instead on Defendants to re-establish good cause for each confidentiality designation. *See* Pls.' Mot. to Modify Protective Order at 5. That argument is incorrect. The burden for modifying a protective order is with the party seeking to modification even when there is a stipulated protective order. *See In re Soc. Media Adolescent Addiction*, 2024 WL 251404 at *2, *8; *Brigham Young Univ.*, 281 F.R.D. at 510. That rationale makes sense here where the parties worked on an expedited schedule to produce thousands of documents and agreed that there was good cause to prevent the public disclosure of the protected materials. And the Protective Order specifically identifies what information may be marked confidential and highly confidential and provides a process for challenging either party's designations.

Requiring a document-by-document review by the Court to determine good cause would waste the parties' and the Court's time, which is precisely why the parties agreed that (1) there

were no "blanket protections" in the Order, Protective Order § 1; (2) the parties must be judicious in their designations by "tak[ing] care to limit any such designation to specific material that qualifies under the appropriate standards" and "[d]esignating . . . for protection only those parts of material, documents, items, or oral or written communications that qualify," *id.* § 5.1; and (3) each party could challenge designations of confidentiality "at any time" after a "dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge" with the possibility of judicial intervention regarding each individual challenge if the challenging party demonstrates that "there is good cause for doing so." *Id.* §§ 6.1-6.3. Those mechanisms comport with the ordinary function of a stipulated protective order, which is to defer document-by-document adjudication until a specific challenge arises. *See, e.g.*, *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2022) (holding that a party seeking a Rule 26(c) protective order must show specific prejudice or harm from disclosure, after which the court balances competing interests); *Foltz*, 331 F.3d at 1131-32 (observing that stipulated protective orders are frequently used during discovery and that good cause determinations may be required when challenges to confidentiality arise). So this Protective Order should be treated as one supported by good cause, carrying a presumption against modification. *See Marine Power & Equip. Co. v. Washington Dep't of Transp.*, 107 Wash. 2d 872, 877-79 (1987) (protective order supported by good cause carries a presumption against modification).

4. Still, even if Defendants were required to make an individual showing for each of the hundreds of documents provided to Plaintiffs that were designated as confidential or AEO, they could meet that burden. Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times*, 467 U.S. at 36. And the documents at issue include sensitive law enforcement materials concerning

operational protocols, deployment strategies, coordination efforts, and internal assessments. Disclosure of such materials risks revealing security vulnerabilities and law enforcement methodologies. Courts recognize that protective orders are appropriate when the party seeking protection demonstrates that "specific prejudice or harm will result" absent confidentiality. *Phillips*, 307 F.3d at 1210-11; *El Badrawi v. DHS*, No. 3:07-cv-1074, 2009 WL 10689490, at *2-3 (D. Conn. Sept. 29, 2009) (declining to modify protective order covering sensitive law enforcement policies, methods, and investigative information); *Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 509-10 (E.D.N.Y. 2011) (preventing public disclosure of a police internal affairs investigative report where dissemination could reveal law enforcement techniques, chill witness cooperation, and implicate privacy interests); *G-69 v. Degnan*, 130 F.R.D. 326, 331-32 (D.N.J. 1990) (recognizing that disclosure of investigative files may be limited to protect confidential informants, investigative methods, or ongoing investigations).

The materials also include identifying information, deposition transcripts, and video recordings of federal officers. The record reflects credible threats directed at Federal Protective Service officers and their families, including harassment at private residences and targeted intimidation near federal facilities. *See infra* Part II. Protecting federal officers and their families from doxxing, harassment, and potential physical harm falls squarely within Rule 26(c)(1)'s mandate to shield persons from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Here, Plaintiffs have not meaningfully addressed the documented threats, operational sensitivities of the materials, or reliance interests underlying the stipulated Protective Order. *See* Protective Order, ECF No. 88. They offer no evidence demonstrating that the benefits of expanded access outweigh the concrete risks to officer safety and operational security. Instead, they vaguely

12

argue that "[i]t appears to the State that [the] Defendants significantly over-designated as protected materials that contain little or no confidential information," Pls.' Mot. to Modify Protective Order at 8, without explaining why they believe that to be the case. Under Rule 26(c), continued protection is warranted. *See e.g.*, *Seattle Times*, 467 U.S. at 34-36; *Phillips*, 307 F.3d at 1211-12; *H.L. Hayden*, 106 F.R.D. at 553–55; *SmithKline Beecham Corp. v. Synthon Pharm., Ltd.*, 210 F.R.D. 163, 166-67 (M.D.N.C. 2002).

Oregon also proposes that Defendants should make "appropriate redactions," Pls.' Mot. to Modify Protective Order at 8, but that merely begs the question of what redactions would be "appropriate." It is unclear what redactions Oregon thinks would suffice to both allow it to conduct a fishing expedition and to appropriately protect the confidential/highly confidential information, and the Court should not require Defendants to utilize any more of their limited resources to make redactions at this juncture. Instead, if Plaintiffs believe that over-designations have occurred, then they should have comply with the Protective Order's mechanisms for challenging confidentiality designations specifically. *See* Protective Order § 6. At this stage, since the trial has already occurred and the Court has entered final judgment, Defendants maintain that the better course is to leave the Protective Order untouched and to allow all confidentiality designations—made by both Plaintiffs and Defendants—to remain in effect to preserve judicial and party resources. If and when Oregon has a specific, legitimate need for specific documents, the parties can confer about any such specific request and seek the Court's intervention if necessary.

## II. The Court Should Issue a Protective Order Regarding the Deposition Videos of the FPS Officers Who Testified at Trial

The Court should also issue a protective order so that the videos of the FPS officers who testified at trial are not disclosed because all non-confidential information is already reflected in

the deposition transcripts, which Oregon could choose to disseminate. Further, both FPS officers have faced threats that could be exacerbated were their faces released to the public.

To start, the issue here is *not* whether Plaintiffs can review the FPS officers' deposition videos but whether those videos may be publicly disclosed. The answer is no because Defendants easily satisfy both steps justifying protection. *First*, the Court must consider whether "the person seeking protection from disclosure" has "allege[d] specific prejudice or harm." *In re Roman Cath. Archbishop*, 661 F.3d at 424 (citation omitted). Here, both FPS officers face specific harm by having their names and faces reflected in the videos released to the public. Both officers are reasonably concerned about being doxxed, having their reputations maligned, or being subjected to serious bodily injury or death. *See* Ex. B, R.C. Decl. ¶¶ 5-6; Ex. C, W.T. Decl. ¶ 6. W.T. has already had his picture put on posters saying, "Wanted – Domestic Terrorist," and he has been followed home and had pictures taken of his home. W.T. Decl. ¶¶ 7, 9. R.C. has been approached by an individual saying that he should use his gun to kill himself, and the ICE Facility has had graffiti written on it saying, "KILL URSELF" and "THE SECOND AMENDMENT IS FOR SHOOTING ICE." R.C. Decl. ¶ 11. And both W.T. and R.C. are aware of other instances where FPS officers were harassed. R.C. Decl. ¶¶ 7-10; W.T. Decl. ¶ 8.

"[R]isks to officer safety constitute particularized harm." *Astorga v. Cnty. of Los Angeles*, No. CV20-09805, 2022 WL 16943897, at *4 (C.D. Cal. Mar. 15, 2022); *cf. Mickens v. Larkin*, No. 12 CIV. 7953, 2014 WL 414013, at *11-12 (S.D.N.Y. Feb. 4, 2014) (holding that a courtroom closure was proper to safeguard the safety and identity of undercover law enforcement agents investigating criminal activity), *report and recommendation adopted*, No. 12-CV-7953 KMW, 2014 WL 6632950 (S.D.N.Y. Nov. 24, 2014), *aff'd,* 633 F. App'x 24 (2d Cir. 2016); *Trujillo v. Jacquez*, No. C-10-05183-YGR (DMR), 2014 WL 4072062, at *4 (N.D. Cal. Aug. 15, 2014)

14

(implementing a protective order with an attorney's eyes only provision to address security and privacy concerns implicated by disclosing confidential materials to a plaintiff because "disclosure of information regarding Defendants' employment could jeopardize the officers' safety"); *Biscoe v. Garcia*, No. CV-11-943-PHX-ROS, 2012 WL 3228820, at *1 (D. Ariz. Aug. 6, 2012) (noting that courts can order otherwise discoverable information to not be disclosed if it would pose a threat to the safety and security of a prison). And the particular harm here would be exacerbated by releasing W.T. and R.C.'s names and their deposition videos containing their faces and voices.

*Second*, no other public and private interests counsel in favor of disclosure. *See In re Roman Cath. Archbishop*, 661 F.3d at 424. Even though this case has received public scrutiny, disclosure would violate R.C. and W.T.'s privacy interests and would expose them to further scrutiny without any benefit to the public. Confidentiality is sought to preserve officer safety and not for any improper purpose. Releasing the videos also would not have any benefit to the case, as the case is now closed. It also would not reveal any information to the public since, according to representations made by Plaintiffs' counsel, W.T. and R.C.'s deposition transcripts have already been released with a version that contains their initials rather than their names.

Accordingly, the Court should hold that the videos of W.T. and R.C.'s depositions shall not be disclosed to any non-party.

## CONCLUSION

The Court should deny Plaintiffs' motion to modify the Protective Order and prevent the disclosure of the videos of R.C. and W.T.'s depositions.

Dated: March 24, 2026                                    Respectfully submitted,

                                                         BRETT A. SHUMATE
                                                         Assistant Attorney General
                                                         Civil Division

15

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

ALEXANDER K. HAAS
Branch Director
Federal Programs Branch

JEAN LIN
Special Litigation Counsel
Federal Programs Branch

TIBERIUS DAVIS
JOHN BAILEY
Counsel to Assistant Attorney General

/s/ *J. Stephen Tagert*

Senior Trial Counsel
J. STEPHEN TAGERT
KATHLEEN C. JACOBS
KIAN AZIMPOOR
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel.: (202) 305-5486
stephen.tagert@usdoj.gov
*Counsel for Defendants*

16